## DANIEL ROGERS vs. STATE OF MARYLAND.

*Criminal Law—Challenge of Juror—Admissibility of Confession.*

In a criminal case, the State may peremptorily challenge a juror after he has been examined on his *voir dire* and accepted by the prisoner when the State's right of peremptory challenge has not been exhausted.

A prisoner charged with murder said to a police officer that he was willing to confess. A stenographer was sent for and the prisoner made a confession in the presence of his sister, two police officers and the stenographer, which was afterwards written out on a typewriter, read over to the prisoner, pronounced correct, and signed by him. The prisoner and his sister testified that certain threats and

inducements had been made by the police officers, but this testimony was contradicted by the officers. *Held*, that the confession was a voluntary act and admissible in evidence against the prisoner.

Appeal from the Criminal Court of Baltimore (DOBLER, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PEARCE and SCHMUCKER JJ.,

*Edward I. Clark*, for the appellant.

*Morris A. Soper*, for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The appellant was indicted and tried before a jury in the Criminal Court of Baltimore, found guilty of murder in the first degree and sentenced to be hanged. In the course of the trial three bills of exception were taken by the appellant and these form the basis of this appeal.

By the first bill of exception it appears, that at the time of the empanelling of the jury, a juror, by the name of Stewart, was called and examined by the State, on his *voir dire*, then turned over to the counsel for the prisoner and accepted by him without further examination. He was then challenged by the State, and to the ruling of the Court in permitting this to be done, after the juror had been accepted by the prisoner, the appellant excepted. There was no error in the ruling of the Court in this exception, which furnishes a cause for reversal in this case. It is specially provided by the 19th sec. of Art. 51, of the Code (Public General Laws), that the right of peremptory challenge shall be allowed to any person who shall be tried on presentment or indictment for any crime or misdemeanor where the punishment by law is death or confinement in the penitentiary ; the accused shall not challenge more than twenty, nor the State more than four, without assigning cause.

The juror in this case was sworn upon his *voir dire* and examined as to his qualifications as a juror. He was not challenged, but accepted by the prisoner as a competent

juror.    It was, then, clearly proper for the State, not hav-
ing exhausted its right of peremptory challenge and having
no reason to challenge for cause, to exercise the statutory
right of peremptory challenge and reject the juror.

The right of peremptory challenge is a right not to select
but simply to reject jurors, without cause assigned.    And
the order of time when this right of challenge shall be exer-
cised is left by the statute to the judgment and discretion of
the trial Court.    *Turpin* v. *State*, 55 Md. 462.

It is the settled practice in this State that the right of
peremptory challenge can be exercised until the juror has
been sworn to try the case.    In *Biddle* v. *State*, 67 Md. 306,
it is said : "Where the accused has exercised the right of
peremptory challenge in respect to any member of the panel,
and the juror thus challenged has retired from the box, the
Court will not allow the challenge to be recalled or with
drawn."

The second and third exceptions relate to the admissi-
bility in evidence of a confession by the prisoner and pre-
sent the same question.    Now the rule is well established
that a confession, unless freely and voluntarily made, is not
admissible in evidence.    *Nicholson* v. *State*, 38 Md. 142 ;
*Biscoe* v. *State*, 67 Md. 7.

At the time of the alleged confession in this case, the
prisoner was confined in the Central Police Station, Balti-
more, and was held on the charge of murder of one Charles
A. Lewis.    Sergeant Henry, one of the officers, testified as
follows, in reference to the preliminaries, which led up to
the confession :

" A.  The Captain sent me back to see him after the turn-
key had come out and made his report to him ; I went back
and spoke to him and asked him how he was, &c., and I said,
Dan, why don't you—now, his sister at the time was cry-
ing, and so was he, both of them, and his sister was saying,
Dan, why don't you tell about this, you know I am inno-
cent ; I said, Dan, if your sister is innocent, why don't you
tell all about this murder of Abraham Lewis; I said, if your

sister is innocent you are the only one who knows so, and it is your duty as a man to tell what you know about it; I said, I would rather have my right arm cut off before I would advise you to do anything but what I thought was your duty as a man.

Q. Well, then, what did Dan say after that?

A. Dan then said to me, he said, "Well, Sergeant., if I tell you anything about it, they will hang me;" I said, Dan, I don't know whether they will or not; and then he said, do you think they will hang me, Sergeant; I said, I cannot say, for that will be a question entirely for the Courts to decide; I cannot say that myself.

Q. Well?

A. And then, after that, he called me and he started to tell me about him; I said, now, don't tell me anything; wait a few minutes; and I went out and told the Captain that he was willing and ready to tell all he knew about it, and I said I thought we better get a stenographer, and I went over after Mr. Swikert, and he came over, and in the presence of his sister, Lavinia Lewis, officer John Wilson and myself, he made his confession.

Q. And then tell his Honor something about reading it over after it had been transcribed?

A. Yes, sir; after Mr. Swikert had taken it over and copied it off on the typewriter, he brought it back, and in the presence of Capt. Barranger and myself, he read it to him, and explained it to him, if there was any corrections that he wanted to make, or anything in there that he wanted to make any changes, to say so then, and it was read in his presence, and in our presence, and he said everything was correct, and he signed it, and I signed it, and the Captain signed it, and I think Mr. Swikert signed it."

The only evidence tending to show that the confession was not the free and voluntary act of the prisoner, was given by the prisoner and his sister, Lavinia Lewis. They testified that the confession was made by reason of certain threats and inducements held out by Sergeants Henry and

Gittings, of the police force. Their testimony, however, was distinctly contradicted by these officers when examined as witnesses on part of the State. We have carefully examined the testimony in this case, and find no evidence that would have justified the Court in excluding the confession from the jury.

On the contrary, it appears that the prisoner was anxious to make a confession, and stated that he had intended to give himself up, and confess on the morning following the murder. The first suggestion or intimation of a confession appears to have come from the prisoner himself. The confession was subsequently reduced to writing by a stenographer, read over, and explained to the prisoner, who signed it and stated at the time that it was correct.

We are of the opinion that a confession made under such circumstances is admissible in evidence and we therefore affirm the rulings of the Court below.

*Judgment affirmed, with costs.*

(Decided June 20th, 1899).