(No. 30767.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LESTER SHERMAN LAZENBY, Plaintiff in Error.)

*Opinion filed March 24, 1949—Rehearing denied May 11, 1949.*

HAROLD N. LINGLE, of Anna, and GROVER E. HOLMES, of Metropolis, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, of Springfield, (JOHN PAUL DAVIS, State's Attorney, of Anna, of counsel,) for the People.

Mr. JUSTICE SIMPSON delivered the opinion of the court:

Plaintiff in error was convicted, in the circuit court of Massac County, of the crime of arson, after a trial before a jury, and was sentenced to serve a minimum term of five years in the penitentiary. He brings this writ of error to review the record of his conviction.

On November 2, 1947, at about 3:30 o'clock in the morning, the restaurant operated by the plaintiff in error, in the city of Anna, was discovered to be on fire. After the fire had been brought under control it was observed by the firemen that the fire was apparently of incendiary origin. Beginning near the front of the building, and running along the floor almost its entire length, was a sort of rope, composed of dish towels, rags and other cloth rolled together, about the size of a man's wrist, and laid end to end. At the kitchen end was a piece of cotton clothesline rope which ran through a hole in the wall into an outside room. The entire length of the rope and bundled cloth was burned and charred. From it emitted an odor of kerosene. It was apparent that this arrangement of rags, cloth and rope was an instrumentality designed to cause fire to spread throughout the restaurant building. The firemen closed off the building as soon as the fire was put out, and notified local police officers, who appeared soon thereafter and began an investigation of the cause of the fire. Plaintiff in error and his mother, who also worked in the restaurant, were arrested Sunday morning, after the fire, and held in custody, without being charged with the commission of the crime, until plaintiff in error confessed on the following Tuesday. The mother was then discharged from custody, while plaintiff in error was indicted, and later convicted of the crime of arson.

Plaintiff in error's principal assignment of error is that the court erred in admitting his confession in evidence because it was obtained after repeated and persistent questioning by police officers who were holding him unlawfully in custody. It is admitted that plaintiff in error was arrested about 5:30 o'clock on Sunday morning, November 2, and detained in custody without being taken before a magistrate, and without a warrant being issued for his arrest, until after his confession had been obtained on Tuesday afternoon. The grand jury met on Tuesday,

November 4, and on the next day returned an indictment charging plaintiff in error with the crime of arson.

During the course of the trial the confession was offered in evidence and its admission objected to by plaintiff in error. The court, thereupon, in accordance with the established practice in such cases, out of the presence of the jury, held a hearing to determine the preliminary question of whether the confession was voluntary. Plaintiff in error testified that he was arrested and placed in the county jail early Sunday morning soon after the fire; that about eight o'clock he was questioned a few moments in the jail office by the deputy fire marshal, the sheriff and the fire chief of Anna, who cursed him when he denied knowing anything about the fire, and threatened to put his wife and baby in jail; that later in the morning, about ten o'clock, he was taken to the courthouse where he was questioned again by the same officers particularly with reference to the keys to the restaurant; that he was cursed and called a liar when he maintained his innocence; that he told the deputy fire marshal that he was willing to take a lie-detector test; that he was put back in jail about three o'clock in the afternoon; that his mother was placed in jail that night and kept importuning him to do something to get her out of jail; that he finally decided on Monday to tell the officers that he did it so they would release his mother, but they did not take him out for questioning again until Tuesday; that he told the lie-detector expert that he would plead guilty; that he was so upset about his mother that he did not know what was in the confession he signed; that he signed the confession in order to get his mother out of jail, because the chief of police and State's Attorney told him they would release her if he would confess to the crime. Plaintiff in error specifically denied telling the officers that he had a key to the back door of the restaurant, or that he cut off a piece of clothesline, soaked it with kerosene and set it on fire through a hole in the wall.

Plaintiff in error's mother testified that she was arrested about ten o'clock Sunday morning, and taken to the State's Attorney's office where her son was being questioned; that she heard the chief of police curse and say that if he had the authority he would make her son talk; that the chief of police and sheriff told her to talk to her son and break him down; that she was placed in jail where she became so sick and nervous that she became hysterical and began screaming for her son to say something to get her out of jail; that on Monday the officers told her it looked pretty black for her unless her son confessed and that when they placed her back in jail she again begged her son to confess. After plaintiff in error signed the confession his mother was released from the county jail.

Every person who was present at the time the written confession was obtained, as well as all persons who were present at any of the prior interrogations of plaintiff in error, testified concerning the matters leading up to and surrounding the taking of the signed confession. These witnesses included the State's Attorney, sheriff, chief of police, fire chief, deputy fire marshal, city policeman, and the lie-detector expert from the State Bureau of Criminal Investigation. From the testimony of these officers it appears that the progression of events from plaintiff in error's arrest until the signing of his written confession was as follows: Two officers went to the home of plaintiff in error about five o'clock in the morning, caused him to dress and return with them to the scene of the fire. It was observed at this time that his shoes were wet and muddy. It had rained the night before and the street, between the home of plaintiff in error and his restaurant, was muddy as a result of excavations which had recently been made. He was shown the interior of the building including the incendiary torch laid along the floor. He denied any knowledge of the origin of the fire. Plaintiff in error was then taken to the sheriff's office where he was interrogated a

few moments, before being placed in the county jail. R. A. Moffat, a deputy fire marshal, arrived in Anna later that morning. After examining the scene of the fire, he went to the State's Attorney's office where plaintiff in error was brought in for further questioning in his presence. This was about 9:30 o'clock on the morning of the fire. In this conversation with the officers, which lasted about two hours, plaintiff in error insisted that he did not have a key to the back door of the restaurant and stated that his mother was the only person who did have such a key. Plaintiff in error's mother also worked in the restaurant and lived in a room on the second floor. She was not in her room at all the night preceding the fire. Later the same day, after his mother had been arrested, brought to the courthouse and questioned, the plaintiff in error was again brought to the State's Attorney's office, about three o'clock in the afternoon, and confronted with his mother's statement that she had given him a key to the back door of the restaurant building. At this conference plaintiff in error continued to maintain his innocence and consented to take a lie-detector test. No further interrogation of plaintiff in error appears to have occurred that day or on Monday or Tuesday, until after the arrival of John F. Lynch, an investigator from the Bureau of Criminal Investigation of the State of Illinois, who came to Anna on Tuesday afternoon to conduct a lie-detector test of plaintiff in error. While Lynch was preparing to give the lie-detector test he talked to plaintiff in error alone for a few moments. Plaintiff in error then said that he was ready to tell the truth and wanted to talk to the State's Attorney. The State's Attorney came in, and after a few moments conversation plaintiff in error told the State's Attorney and other officers that he had set the fire and gave a detailed account of the manner in which it was accomplished. This confession was reduced to writing, signed by plaintiff in error and witnessed by all persons who were present. On

rebuttal each of these persons made an express denial that any threat, promise or inducement of any kind had been made to plaintiff in error by anyone; that the statement was freely and voluntarily given by plaintiff in error after the State's Attorney had advised him as to his rights, including his right to counsel, a trial by jury, and the penalty for the offense of arson.

The trial court found that the confession had been freely and voluntarily made and admitted it in evidence. The decision of the court on this preliminary question as to the admissibility of the confession will not be disturbed unless it is manifestly against the weight of the evidence. (*People* v. *Fox,* 319 Ill. 606; *People* v. *Goldblatt,* 383 Ill. 176.) Confessions are competent evidence only when they are voluntarily made. (*People* v. *Sweeney,* 304 Ill. 502.) Whether the confession is voluntary is a preliminary question which must be decided by the court from evidence heard out of the presence of the jury. In considering the question the court weighs the evidence submitted as it does in the consideration of any question submitted to it for decision. The real question presented to the court is not whether there is evidence of threats or promises, but whether there has been any threat or promise of such a nature that a prisoner would be likely to tell an untruth from fear of the threat or hope of profit from the promise. (*People* v. *Fox,* 319 Ill. 606.) We have held that a confession need not be spontaneous, nor is it necessary that it proceed wholly at the suggestion of the accused in order to be voluntary. It may be set in motion by external causes, so long as such influences are not what the law deems improper. A confession is not rendered inadmissible by the mere fact that it is elicited by questions put by police officers or others, even though the questions assumed the prisoner's guilt and were roughly asked. Neither is an exhortation or adjuration to tell the truth sufficient to justify the rejection of a confession. The fact that a

prisoner was being detained without process would not of itself render the confession inadmissible if it was otherwise shown to be voluntary. *People* v. *McFarland,* 386 Ill. 122; *People* v. *Klyczek,* 307 Ill. 150; *People* v. *Vinci,* 295 Ill. 419.

After plaintiff in error was arrested he was incarcerated in the common jail of the county in which the crime was committed. At the jail he was treated no differently than any other prisoner. He was removed for questioning only as the investigation being conducted by the officers required. He was first questioned when the deputy fire marshal arrived to conduct an inquiry into the cause of the fire. On this occasion plaintiff in error insisted that his mother was the only person who had a key to the back door of the restaurant. After the mother had been questioned on this point, plaintiff in error was again brought out of the county jail and confronted with his mother's denial. He still maintained his innocence and consented to take a lie-detector test. He was returned to the county jail and not interrogated again until the second day thereafter, when the lie-detector expert came with his equipment. Plaintiff in error told this officer, before the test had been given, that he desired to plead guilty. His confession was not the result of hours or days of unremitted questioning. Neither does it appear to have been elicited as the result of any promise, inducement or hope of reward made by any officer, or other person. While he contends that he confessed in order to free his mother from jail, the officer to whom he first expressed his desire to confess was a stranger to the case who did not know that plaintiff in error's mother was in jail, and denied that he was asked any question by plaintiff in error concerning his mother. Plaintiff in error's contention that there was such a continuation of unlawful detention, delay in commitment, denial of counsel and friends, and persistent questioning

as to make the confession inadmissible is not supported by the evidence. In the cases relied upon by plaintiff in error, each of the confessions ruled inadmissible was obtained as a direct result of such persistent and unremitted questioning, in conjunction with the unlawful detention, as to render it involuntary. The circumstances surrounding the making of the confessions were different from those in the case at bar and the cases are not analagous. The decision of the trial court on the preliminary question as to the admissibility of the confession was not manifestly against the weight of the evidence, and there was no abuse of discretion in permitting the confession to be read to the jury.

Plaintiff in error also contends that it was error to admit in evidence photographs of the interior of the restaurant taken the next day after the fire. The ground of the objection was that the State's Attorney had rearranged some of the rope composed of rags and cloth, which has been described by witnesses as an incendiary torch, before the photographs had been taken. The general rule is that photographs stand on the same footing as a diagram, map, plan or model, and that a photograph is a legitimate mode of proving a condition which can be shown by a representation of that sort. (*Lake Erie and Western Railroad Co.* v. *Wilson,* 189 Ill. 89; *Illinois Southern Railway Co.* v. *Hayer,* 225 Ill. 613.) However, photographs of a scene or objects in evidence which have been posed or arranged by one party, for the purpose of taking the photograph, in the way or manner sought to be shown, are not admissible. (*People* v. *Crowe,* 390 Ill. 294; *Ellis* v. *Flannigan,* 253 Ill. 397.) The evidence shows that there had been no change in the general interior of the restaurant between the time of the fire and the taking of the photographs. It does appear, however, that the State's Attorney or sheriff had picked up a few of the dish towels

or rags which composed the so-called incendiary torch, but had immediately replaced them, as near as might be, in the position they had originally been found. This situation was fully explained to the jury, and the small portion of the incendiary torch which had been disarranged was pointed out in the photograph. The fact that the torch was lying along the floor at the time of the fire was not in controversy. The evidence does not show that there has been such a change of condition, or rearrangement of objects, as to render the photographs of the interior of the restaurant inadmissible in evidence. Under these circumstances the jury could not have been misled as to any material fact and it was not error to admit the photographs in evidence.

As a final ground for reversal it is urged that the court erred in denying plaintiff in error's motion to exclude attorney Ford Rendleman as assistant counsel for the People. Neither the context of the motion, nor the grounds on which it was made are presented in the abstract of the record. There is no showing of the facts surrounding the employment of Rendleman to assist the State's Attorney. Unless the abstract shows the basis of plaintiff in error's contention, it is impossible to pass upon the questions raised by his motion. (*Department of Finance* v. *Bode,* 376 Ill. 374; *Hayes* v. *Industrial Com.* 383 Ill. 272.) An examination of the report of proceedings reveals that John Paul Davis, the State's Attorney of Union County, Robert H. Chase, the State's Attorney of Massac County, in whose county the cause was being tried on a change of venue, and Ford L. Rendleman, special assistant, appeared on behalf of the People. It further appears that State's Attorney Davis was present throughout the trial, and the prosecution was conducted under his direct supervision. Where assistants State's Attorney are required the county board of supervisors, in co-operation with the State's Attorney, has power to provide such assistants. (Ill. Rev.

Stat. 1947, chap. 53, par. 18.) There is nothing in the abstract of the record to show that Rendleman was not duly and legally appointed to assist the State's Attorney in carrying on the prosecution of the People's case against plaintiff in error.

For the reasons stated, the judgment of the circuit court of Massac County is affirmed.

*Judgment affirmed.*