### ALTON PARIS V. STATE.

No. 25,861. June 4, 1952.
Writ of Certiorari Denied by Supreme Court of the
United States October 20, 1952.

Hon. R. W. Williford, Judge Presiding.

*Mandell & Wright,* and *Ben N. Ramey,* of Counsel, Houston, for appellant.

*George P. Blackburn,* State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is murder; the punishment, death.

The deceased was a wild life biologist at the Cat Fish Game Preserve in Anderson County. He was last seen alive by state's witnesses at a time when he went into the marsh to investigate duck shooting which was evidently taking place therein. When the deceased did not return from the marsh, a searching party was organized; and, after three days of searching under the direction of the U. S. Air Force, his body, riddled with shot gun pellets, was found in shallow water under a log, apparently weighted down by a chunk of wood.

While the searching party was at work, the sheriff began his investigation. This led him to the home of appellant, adjacent to the game preserve, who was known to be a hunter and trapper and who had frequented the marsh in question prior to the time it became a game preserve. Three days later, when the body of deceased was found and appellant was notified of the discovery, the appellant confessed.

Appellant's confession and his testimony in his own behalf on the trial recite substantially the same facts, with the following exceptions:

1. In his confession, the appellant related that, after he had shot two ducks on the game preserve, the deceased came upon the scene, inquired if he "was having any luck," and picked up the two ducks; whereupon, the appellant fled. He further related that deceased began to chase him, and "I just whirled my gun around back and fired the gun and he threw my ducks up in the air and fell." "I ran up by where he was laying in the edge of the water and picked up my ducks and ran home. I did not stop to see whether he was breathing or still living."

In his testimony, appellant stated that, as he was running from the deceased, he was carrying his gun with the stock forward; that the safety on the gun came off in some inexplicable manner; that the gun discharged accidentally; that after the gun discharged he circled back over his trail, picked up his ducks and ran home. He admitted that deceased had been carrying the ducks immediately before the shot was fired, but refused to admit that he saw the body of deceased when he went back to retrieve the ducks.

2. In his confession, he related that he had returned to the scene of the killing on the day following and while the search was in progress and concealed the body of deceased under a log and a chunk of wood.

In his testimony, he denied any such return to the scene of the homicide.

On the day following the homicide, the sheriff asked appellant to show him in which part of the preserve he had been hunting the preceding day. Appellant admitted in his confession and while testifying that he had designedly directed the sheriff to another section of the marsh. Appellant admitted that the eye glasses found by the searching party near the body of deceased were his own.

It is with this background that we approach the question of the admissibility of the confession.

It is undisputed that there was no force, cruelty or brutality inflicted upon the appellant by those who had him in custody. Appellant testified that everybody had been "very nice to him all the way through." On cross-examination by the state, the appellant testified as follows concerning his decision to tell the officers about his presence at the scene of the homicide: "I hated it so bad until I decided I'd tell the truth about it and be done with it, because I could not rest. No, you did not use and force or pressure to get me to do it, 'but you told me the truth was the very thing to tell.' "

We think the above, together with the testimony of those who witnessed the signing of the confession, disposes of the question of its voluntary nature, but we go further and discuss appellant's contention that he was illegally arrested and illegally detained prior to the making of the confession and that such renders the confession inadmissible.

The primary question for our determination is whether a causal connection was shown between such arrest and detention and the making of the confession.

According to all the evidence, including the testimony of appellant, the deceased was killed in the forenoon of Thursday, December 13, though his body was not found until the following Sunday. Shortly before dark on Thursday, some of the officers

came to the home of appellant and questioned him about where he had been that day and as to what firearms he owned. A peace officer, testifying as an expert, said that the appellant's shot gun had been recently fired. Some few hours later, the officers returned, informed the appellant that a man was missing, and carried him to jail. He makes no claim that he was questioned at this time. The following morning, appellant was taken by the officers to the game preserve. (It was on this trip that appellant admits he directed the officers to a portion of the marsh some distance from where the shooting had occurred.) After a short, futile search of this distant section of the preserve, appellant was dismissed by the officers and started walking home. It was during the trip to his home, after being so dismissed, that appellant, according to his confession, went to the spot where he had killed the deceased and attempted to hide the body under a log and chunk of wood.

Later in the day Friday, the officers returned to appellant's home and suggested that he take a lie detector test, to which they say he consented; and, in preparation for the journey to Austin where the lie detector is located, he was brought back to the jail, where he remained overnight. He makes no contention that he was questioned during this stay in jail. Early Saturday morning, appellant was carried to Austin, where he was given the test. No contention is made that the test itself constituted long and uninterrupted questioning. On the same day, appellant was returned to the jail at Palestine. He remained there overnight and makes no contention that he was questioned during this period of confinement. After the discovery of the body of deceased on Sunday, the sheriff confronted appellant with this news, together with the fact that appellant's glasses had been found near the body. The only deception employed in the entire proceedings, so far as we can tell from the record, occurred when the sheriff told appellant that appellant's wife had already identified the glasses as being his. We do not consider this as raising a question because appellant identified the very same glasses as being his own during the course of the testimony at the trial, and they were further identified as belonging to appellant by the optometrist who had made them for him.

It was upon being so confronted that appellant confessed. There is no contention that appellant was held incommunicado or that the place of his confinement was an unusual one.

All other issues raised by appellant's testimony, having been controverted, passed out of the case with the jury's verdict.

This, we understand to be the rule of the Supreme Court of the United States.

We have recently had occasion to write on this same question.

In Dimery v. State, 156 Tex. Cr. R. 197, 240 S. W. (2d) 293, where the accused was detained in jail for four days without being taken before a magistrate prior to the making of the confession, we held that the confession was admissible unless it was shown that there existed a causal connection between the arrest and failure to take before a magistrate and the making of the confession.

In Shook v. State, 156 Tex. Cr. R 515, 244 S. W. (2d) 220 we cited the Dimery case with approval and observed that since its rendition the rule therein expressed had received the approval of the Supreme Court of the United States in Gallegos v. Nebraska, 72 S. Ct. 141.

In the two recent cases of Leviness v. State, (page 157, this volume), 247 S.W. (2d) 115, and Golemon v. State, (page 534, this volume), 247 S. W. (2d) 119, we had occasion to discuss at length our reasoning in connection with the matter here presented. Reference is made thereto.

In Gasway v. State, No. 25,778, 156 Texas Crim. R. 248, S. W. (2d) 942; and Hulen v. State, No. 25,776, (page 507, this volume), 250 S. W. (2d) 211, we discussed the taking of a lie detector test as a form of questioning.

We find no merit in appellant's complaint about the introduction into evidence of his shot gun and overalls. The officers testified that appellant freely surrendered these articles to them. The appellant did not deny this.

We find nothing in the case at bar to lead us to believe that a causal connection existed between the arrest and detention of appellant without a warrant, together with a failure to take him before a magistrate, and the making of the confession.

We hold the confession to have been voluntarily made and are unable to reach the conclusion that the undisputed facts of this case are such as would authorize this Court to say that the Supreme Court of the United States would hold it inadmissible.

Finding no reversible error, the judgment of the trial court is affirmed.