ALEX HENSON V. STATE.

No. 26,609.   December 9, 1953.
Appellant's Motion for Rehearing Denied March 3, 1954.
Appellant's Second Motion for Rehearing and State's Second
Motion for Rehearing Denied April 14, 1954.

648

*Al Clyde* and *Eva Barnes,* Ft. Worth, for appellant.

*Robert M. Allen,* County Attorney, *Gordon R. Willborn,* Special Prosecutor, both of Henderson, and *Wesley Dice,* State's Attorney, Austin, for the state.

DAVIDSON, Judge.

This is a conviction for nighttime burglary of a private residence, with punishment assessed at ninety-nine years in the penitentiary. The felony alleged to have been intended by the burglary was that of rape.

About twelve o'clock on the night of December 3, 1952, Dr. Hilbun, a physician of Henderson in Rusk County, was called at his home to come to the hospital to assist in an emergency operation. He left his wife asleep in the residence.

In view of the matters presented for review, it would serve no useful purpose to detail the facts further that to say that they are sufficient to show that appellant, after Dr. Hilbun had left, broke into the house, went to the bedroom of Mrs. Hilbun, and there, after she resisted his advances, shot her three times with a pistol, and then fled from the house.

Mrs. Hilbun was unable to positively identify the appellant as her assailant. His identity, as well as his guilt, is shown, primarily, by his written confession, which the state used in evidence.

The confession played an important part in the establishment of the state's case.

This appeal turns, primarily, upon the receipt in evidence of the confession over appellant's objection that it was coerced and forced from him.

We state the facts deemed pertinent to the question thus presented:

Shortly after the offense had been committed, appellant was arrested in hiding at a servant house on the residential premises

of the Hilbuns, where appellant's former wife, a servant of the Hilbuns, lived.

Appellant was taken to the hospital and into the presence of Mrs. Hilbun, who had been carried there after being shot. She stated: "I don't think it was Alex, you all carry him on."

From the hospital, the officers took appellant to jail, where paraffin was applied to his hands to determine the existence of nitrates thereon.

Appellant was then taken by officers Washburn and Newbill to Rusk, the county seat of Cherokee County, which adjoins the county of Rusk. This was the night of December 4. The next day these officers came to the jail, talked with appellant, and, according to appellant, beat and bruised him by kicking and knocking him out of and hitting him with a chair. The next day, December 6, appellant was carried by the officers to Austin and there given the lie detector test, following which the officers started back to Henderson with him. On the way, near Palestine, officer Washburn allegedly tightened the hand cuffs around appellant's wrists to the extent that the circulation of the blood was impeded and his hands became numb. During the trip he was repeatedly beaten and whipped by the officer. Upon reaching Rusk, he was again placed in jail.

A few days thereafter, he was taken by the officers to Beaumont, where he was given what he called the "truth serum" in his arm. After the test had been completed, he "woke up," and officer Washburn and an unidentified "other fellow" beat, whipped, choked, and kicked him, according to appellant's testimony, and one of his teeth was knocked out.

Appellant further testified that while in Beaumont Washburn said to him:

"When I get back to Henderson I am going to get that lying wife of yours and she is going to get just what you *done* got. . . .

"We are going right on back and get her."

From Beaumont appellant was taken to Henderson to jail. One of the jailers there told him that his former wife (appellant's) had been arrested and was then in jail.

On the receipt of this information, appellant decided to make

a statement and was taken by the sheriff to the office of the county attorney, to whom the confession was made.

There was evidence as to appellant's confinement and incarceration after and subsequent to the making of the confession. Those facts are not further adverted to or set forth, inasmuch as they are not deemed material as furnishing a basis for the confession or upon which the confession had theretofore been made.

Appellant insisted that the immediate cause of his making the confession was, quoting from his testimony: "because they said they was going to punish me as long as I didn't make one and was going to treat Katie (his former wife) the same way," and that he signed the confession to prevent further punishment by the officers.

Upon the trial of the case, appellant repudiated the confession and insisted that the statements contained therein were not true. His defense was that of alibi.

The facts heretofore set out are taken and shown entirely from the appellant's testimony.

The admissibility of a confession in cases such as here presented is, and must be, determined from the undisputed facts. It becomes material, then, to see what facts or testimony given by appellant were challenged by the state's witnesses.

In the first instance, each and every officer who appellant claimed beat, whipped, choked, and kicked him denied any such treatment and, in support of such denial, examining physicians testified that his body evidenced no signs of physical abuse or mistreatment. The officers denied any threats against appellant or his ex-wife, contrary to appellant's claim.

The sheriff, to whom appellant first made known that he would make the confession, testified that such act on appellant's part was entirely voluntary, without any suggestion from him that he make it.

The sheriff also testified that when appellant first made known to him that he would make the confession, he advised him to "study about this tonight" and that it was not until the following morning that appellant willingly went with him to the

office of the county attorney and there made the confession to the county attorney.

Appellant was not carried before a magistrate at any time prior to the confession.

The record does not reflect whether appellant was deprived of the right to see or to converse with any persons other than those connected in some manner with law enforcement, from the time of his arrest until long after the confession was made.

It may be said, then, that in addition to the officers' failure to take appellant before a magistrate, his being in the custody of the officers, and his confinement, the undisputed facts show: the paraffin test, the trip to Austin and the lie detector test, the trip to Beaumont and the truth serum test, and the arrest and incarceration of his former wife.

It is significant that neither party attempted to show that the making or the result of either of the tests was used to persuade appellant to make a confession. Appellant did not so claim in his testimony.

There is an absence of any testimony showing or tending to show that while appellant was in jail, under arrest, or being carried from one place to another, he was subjected to long or continuous questioning by the officers. Appellant, by his testimony as we understand it, makes no such claim.

Reduced to its final analysis, then, the claimed inadmissibility of this confession turns upon the undisputed facts that appellant was not carried before a magistrate, was held in jail for nine days before the confession was made, was subjected to lie and truth serum tests, was carried to and placed in different jails, and his former wife had been arrested and placed in jail in connection with the alleged crime.

We have repeatedly refused to hold that failure to take an accused before a magistrate, as is contemplated by statute (Art. 217, Vernon's C. C. P.), of and within itself requires the rejection of a confession made while under arrest. Dimery v. State, 156 Tex. Cr. Rep. 197, 240 S. W. 2d 293; Shook v. State, 156 Tex. Cr. Rep. 515, 244 S. W. 2d 220; Leviness v. State, 157 Tex. Cr Rep. 160, 247 S W. 2d 115; Golemon v. State, 157 Tex. Cr. Rep. 534, 247 S. W. 2d 119; Gasway v. State, 157 Tex. Cr.

Rep. 647, 248 S. W. 2d 942; and Paris, v. State, 157 Tex. Cr. Rep. 580, 249 S. W. 2d 217.

We are aware of no authority which warrants the rejection of this confession merely because the appellant was held in custody and confined to jail. In this connection, we are not unmindful of our holding in Prince v. State, 155 Tex. Cr. R. 108, 231 S. W. 2d 419, and the holding of the Supreme Court of the United States in Lisenba v. California, 314 U. S. 219, 62 S. Ct. 280, 86 L. Ed. 166, Ward v. Texas, 316 U. S. 547, 62 S. Ct. 1139, 86 L. Ed. 1663, Watts v. Indiana, 338 U. S. 49, 69 S. Ct. 1347, 93 L. Ed. 1801. We do not understand that those cases so hold.

Such, also, may be said of the lie detector and truth serum tests. There is no suggestion in this case that such tests caused, brought about, or in any manner contributed to the making of the confession.

The overwhelming preponderance of the evidence shows that appellant was not physically abused or mistreated by the officers. His contention, then, that he confessed in order to prevent his former wife from being subjected to such character of treatment must be regarded as having no foundation in fact. Any fear that appellant entertained as to his former wife being punished legally for any act on her part growing out of or being a part of the crime charged is not such an underlying cause as would render the confession involuntary. Lopez v. State, 12 Tex. App. 27.

Here, the jury, under the trial court's full and fair presentation in his charge of the issues of fact touching the voluntariness of the confession, found against the appellant's contention. The trial court approved that finding. We, ourselves, have made an independent examination of the facts and are convinced of the correctness of such finding.

The conclusion is reached, therefore, that the confession was properly admitted in evidence and that its admission in evidence violated no statutory, or state, or federal constitutional right of the appellant.

As heretofore indicated, within a short time after the commission of the alleged offense appellant was subjected to the so-called paraffin test—that is, melted paraffin was placed upon

his hands and, after having cooled and hardened, was removed and examined.

The examination of the removed paraffin showed the presence of nitrates thereon, as a result of which a witness was permitted to testify that in his opinion appellant had recently and prior to the test fired a gun or pistol.

Such fact was of material importance to the state's case.

The appellant did not agree to the test or waive any right which he had to object thereto.

To all this testimony the appellant objects, insisting that his constitutional right against self-incrimination had been violated. In support of his contention, appellant cites the case of Apodaca v. State, 140 Tex. Cr. 593, 146 S. W. 2d 381, and Rochin v. California, 342 U. S. 165, 72 S. Ct. 205, 96 L. Ed. 183, 25 A. L. R. 2d 1396.

We are aware of the holding in those cases but we cannot bring ourselves to the conclusion that they are here applicable. To the contrary, we are of the opinion that this evidence (paraffin test) is ruled by the so-called footprint and fingerprint cases which authorize the receipt in evidence of the footprint of the accused (Texas Digest, Vol. 11, Criminal Law, Key 393(4), p. 432) and fingerprints (Conners v. State, 134 Tex. Cr. R. 278, 115 S. W. 2d 681) of the accused as not being violative of constitutional provision against self-incrimination. See, also, Coleman v. State, 151 Tex. Cr. R. 582, 209 S. W. 2d 925, wherein scraping from under fingernails was admitted in evidence.

It must be remembered that we are dealing, here, with that character of evidence referred to as real as distinguished from oral. The finding of nitrates upon the hand of appellant as a result of applying the paraffin was but revealing that which could not be altered, changed, or colored by oral testimony.

We are constrained to agree that the testimony was admissible.

Bills of exception appear which complain of argument of state's counsel as constituting unsworn testimony.

In each instance, the objection of appellant was sustained and the jury was instructed to disregard the argument.

We are unable to say that the argument was such that injury to appellant resulted notwithstanding its withdrawal by the trial court.

The judgment is affirmed.

Opinion approved by the court.

ON MOTION FOR REHEARING.

MORRISON, Judge.

In our original opinion we said, "The confession played an important part in the establishment of the State's case." This is true, but there were several other items of circumstantial evidence not mentioned which tended to connect the appellant with the commission of the crime charged. Stein v. New York, 346 U. S. 156, 97 L. Ed. 1522. We did not mention the evidence adduced concerning the use of a bloodhound. It was shown that the dog which was brought to the Hilbun home shortly after the assault had been trained to track human beings at our state penitentiary and that his training had continued up until his use on the night in question. Those who had trained the dog gave as their opinion that he was an accurate tracker. The officers at the scene held their investigation in abeyance until the arrival of the dog. While circling the house, the dog picked up a track and followed it to the porch of the house where the appellant was found. Some short while thereafter the dog repeated this performance, leading his master back over the same trail to the same house. This was the only trail discovered by the dog that night.

It was further shown that the investigating officers found a freshly made shoe track leading from the house where appellant was found to the Hilbun home, and the appellant on cross-examination admitted that it was shown to him and that it fit the dimension of his shoes.

It was further shown that the attack took place sometime shortly after midnight, that it had rained between ten o'clock and midnight, and that when the appellant was apprehended his shoes and the bottoms of his trousers were wet. We think

that this was cogent evidence to be considered by the jury in passing upon the appellant's testimony that he had gone to bed at 7:30 p. m. and had not been out of the house after this until his arrest.

Appellant's able and forceful counsel has taken us to task for referring to Katie as appellant's former wife. We find that appellant's counsel, in examining the accused, asked, "Who is your ex-wife?" to which appellant replied, "Katie."

Appellant says that there is not a scintilla of evidence that the appellant was hiding at the home of his former wife near the Hilbun home shortly after the assault. The officers testified that the bloodhound led them to Katie's home, that they asked Katie if the appellant was there, and she said that he was not. This Katie admits. The officers then testified that they entered the home, and during the course of their search thereof attempted to open a closed door, that this door seemed to drag and was hard to open, but that after it had been opened a fraction they saw a colored man's foot and leg up against the door, and after they got the door completely open there stood the appellant. This spells hiding to us. Nowhere in the record have we found a satisfactory explanation of this extraordinary conduct.

Appellant questions the admissibility of the results of the paraffin test. In a well reasoned opinion by the Supreme Court of Pennsylvania (Commonwealth v. Westwood, 188 Atl. 304), we find the following:

"The unexplained presence of specks of partially burned gunpowder on defendant's right hand a few hours after the shooting — as chemists found and testified — was, if the jury found such to be the fact, significant. If the victim had been stabbed instead of shot, the unexplained presence shortly thereafter of human blood on the right hand of one who had an opportunity to commit the crime, would have been significant."

He further questions the qualifications of the officers to administer the test. Sergeant Frank Fazil, with 15 years' experience on the State Highway Patrol, supervised the placing of the paraffin upon the appellant's hands. After its removal, it was forwarded to the Texas Department of Public Safety at Austin, where Chemist McDonald made the examination. McDonald, the holder of a Master's degree in chemistry with further post graduate work and three years' police experience, described the

test and testified as to the presence of nitrates. We find nothing inherently unreliable about such tests.

Appellant claims that there is in the record no denial of the appellant's testimony about threats to do violence to his wife and acts of brutality inflicted upon him by Officer Washburn while they were in the Beaumont jail.

Officer Washburn testified that he accompanied Officer Newhill and the appellant to Beaumont for the purpose of making the truth serum test, but that he had other business in Galveston and that when he left Beaumont the appellant was in the doctor's office. Washburn stated that he did not know whether or not the appellant was carried to jail on this trip to Beaumont and that he was not in Jefferson County at the time appellant claims these things occurred. We consider this a denial that he made any such threats or inflicted any such brutality on such occasion.

Appellant claims that our opinion ignored the testimony of the appellant and his witnesses concerning the missing tooth and scars upon his body. The tenor of their testimony was to the effect that the appellant sustained such injuries while being interrogated by the officers. Two practicing physicians examined the accused during the trial and gave their professional opinions that the appellant had lost his tooth and had sustained a slight scar on his hand long before the date of the commission of the offense and therefore prior to the interrogation by the officers. They testified that they found no other marks upon his body "that were not ordinarily common for a person to have."

The jury had the right to reject the testimony of the appellant and his witnesses and accept the testimony of the two doctors and the officers.

In connection with the confession, we think it is worthy of note that the appellant testified that he was not afraid of either the prosecutor who took the confession or the two officers who witnessed it. He was questioned concerning each sentence in the main body of the confession. He was then asked if he had told the officers that, and he replied that he had.

Because some of the names of the counties and cities are the same, we make this explanation of appellant's confinement following his arrest in order to make it clear that the rule in

Ward v. Texas, supra, was not violated here. The offense occurred in the city of Henderson in Rusk County. Appellant was confined in the jail of that county and for his own protection moved to the jail at Rusk in Cherokee County, which adjoins Rusk County. Other than this, the appellant was carried to Austin and Beaumont so that he might be given scientific tests.

We have recently in the Gasway, Hulen and Paris cases, cited in the original opinion, attempted to show the need and propriety of carrying an accused to the nearest place where scientific tests are available. In this relatively sparsely settled state, such places are few and sometimes far from the scene of the crime. The very nature of the tests themselves is inconsistent with police brutality. Both are designed to ascertain the truth, whether it be favorable or unfavorable to the prosecution. Though we do not consider it as a factor in weighing the sufficiency of the evidence, we have learned from the many cases which we review that the Texas Department of Public Safety, where the lie detector tests are administered, makes its testimony available to an accused when such tests indicate his innocence.

Remaining convinced that we properly disposed of this cause originally, appellant's motion for rehearing is overruled.

ON STATE'S SECOND MOTION FOR REHEARING.

MORRISON, Judge.

The opinion heretofore rendered herein on March 31, 1954, is withdrawn; and the following is substituted in lieu thereof.

It is shown in the verdict of the jury that they found the defendant guilty of burglary of a private residence at night with the intent to commit the crime of rape, with punishment assessed at confinement in the state penitentiary for a period of 99 years.

In the judgment of the court the same verdict is set forth, but the judgment further recites that defendant shall be punished by confinement in the state penitentiary "for life."

The judgment is therefore amended in order to conform with the verdict of the jury so as to order that appellant be confined in the penitentiary for a term of 99 years.

The sentence correctly provides that appellant be confined in the penitentiary for an indeterminate term of not less than 5 years nor more than 99 years. That portion of the sentence which refers to the punishment adjudged is reformed so as to read that such punishment was assessed in the judgment at 99 years.

The judgment and sentence being thus reformed, appellant's second motion for rehearing and the state's motion are overruled.