# PARKER *v.* STATE

[No. 145, September Term, 1961.]

*Decided January 29, 1962.*

The cause was argued before HAMMOND, HORNEY, MAR-BURY and SYBERT, JJ., and DUCKETT, J., Associate Judge of the Fifth Judicial Circuit, specially assigned.

*Patrick L. Rogan, Jr.,* with whom was *Vaughn E. Richardson* on the brief for appellant.

*Joseph S. Kaufman, Deputy Attorney General,* with whom were *Thomas B. Finan, Attorney General* and *Daniel T. Prettyman, State's Attorney for Worcester County,* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

Claiming that he had been prejudiced by the manner in which the jury was selected and by the ruling which allowed the State to impeach one of its own witnesses, the defendant (Richard L. Parker) has appealed from the judgment entered on a verdict of guilty of murder in the first degree without capital punishment.

On the night of January 17, 1961, the defendant and the victim (Rena Mae Choquette) had an argument at a bar in Pocomoke City. Later another angry controversy took place between them on Clarke Street. Still later (shortly after 11:00 p.m.), while the victim was walking with another man and woman on Willow Street, the defendant approached the trio and shot the victim three times with a pistol. She died

twelve days later. After the shooting, the defendant fled the scene but returned a short time later and voluntarily surrendered to the police.

(i)

At the trial, and while the jury was being selected, the prosecuting attorney, having exhausted the ten peremptory challenges allowed the State, sought permission, and, over the objection of the defendant, was permitted to withdraw the challenges to two prospective jurors the State had previously rejected, and to reexercise such challenges against two other prospective jurors that had been summoned as talesmen. When that had been done, the defendant, who had used only twelve of his twenty peremptory challenges, used two more of them (for a total of fourteen) to challenge the two prospective jurors as to whom the State had withdrawn its challenge. Thereafter, the selecting of a jury acceptable to both parties was continued and completed without further controversy, and without the defendant having to exhaust all of the peremptory challenges to which he was entitled.

At the argument in this Court, the defendant, even though he conceded that the jury sworn to try him was not incompetent, nevertheless, vigorously insisted that it was prejudicial error for the court to permit the State to withdraw a peremptory challenge as to a previously challenged juror and reexercise it against another prospective juror. Under the circumstances in this case, we think the error (if it was that) was not prejudicial.

Code (1957), Art. 51, § 24, provides, among other things, that "the accused shall not challenge more than twenty nor the State more than ten jurors," but the statute is silent as to when or in what circumstances such challenges may be exercised. It is obvious, however, as was pointed out in *Turpin v. State,* 55 Md. 462 (1881), that the privilege of challenging peremptorily is a right to reject a juror without the necessity of first showing cause and not a right to select a juror.

In *Biddle v. State,* 67 Md. 304, 10 Atl. 794 (1887), where the jurors were separately sworn as soon as they had been accepted by both parties and where the accused *had* used all of

the peremptory challenges allocated to him, it was held that after a peremptory challenge had once been exercised in respect to a member of the regular panel, a party has no right to recall or withdraw the challenge for the purpose of peremptorily rejecting a more objectionable talesman who had been summoned and added to the panel of prospective jurors.

But in *Rogers v. State,* 89 Md. 424, 43 Atl. 922 (1899), and again in *Whittemore v. State,* 151 Md. 309, 134 Atl. 322 (1926), where the swearing of the respective jury was deferred until a full panel of twelve jurors had been obtained and where the State had no reason to challenge for cause and *had not* exhausted all of its challenges, it was held that a party has a right to continue to exercise his statutory right to peremptorily reject a juror, including those who had theretofore been selected and accepted by both parties, up to the time the jurors are sworn.

However, a case such as this, where the jury had not been sworn until after a panel of twelve jurors had been accepted by both parties and where the State (though not the defendant) had exhausted the peremptory challenges to which it was entitled, obviously presents a somewhat novel question, yet it is one which we need not answer at this time. For even if we assume, without deciding, that the principle of the *Biddle* case ought to be applied here—instead of the principle of the *Rogers* and *Whittemore* cases—we think it is clear that the defendant (who had not exhausted his challenges) was not prejudiced.

(ii)

The second and only other contention is that the court erroneously allowed the State to cross examine one of its own witnesses. A witness (James H. Young) called by the State had testified that the defendant visited his apartment on the night of the shooting, and in a conversation with the witness had stated that he was "going to shoot somebody," but when the witness was questioned further as to whether he had seen the defendant do anything on that occasion, he replied that he did not, and added that he had heard what the prosecuting attorney had "referred" to the jury and claimed that he had not told the prosecutor "nothing like that." When this answer

came in, the court was advised by the prosecuting attorney that the State had been taken by surprise and requested an opportunity to cross examine the witness on a point contained in a prior inconsistent statement the witness had given to the chief of police of Pocomoke City. In that statement, which was in writing and signed, the witness had said that: "Parker came up * * * and loaded his gun and said, 'I am going to kill somebody.'" The police chief was not called or examined as to the statement. Instead the court, over objection, allowed the State to examine the witness on the statement. During the course of the examination, the witness admitted that he signed the statement and that he probably did say that the defendant had said he was "going to kill somebody," but denied that he had told the chief of police that the defendant had "loaded his gun." And when the examination was concluded, the defendant, at the suggestion of the court, moved to strike out the answers but the motion was overruled. The reason given for objecting was that the State was attempting to impeach its own witness, but in this Court the only ground of error assigned is that the written statement was not given to the party calling the witness.

As to whether it was error to permit the State to impeach its own witness, we think it is clear that it may do so in a proper case. Furthermore, it is apparent that this case is distinguishable from *Bruce v. State,* 218 Md. 87, 145 A. 2d 428 (1958), in that here there was surprise while in the *Bruce* case there was not. But the claim here goes not to the presence or absence of surprise, but to the question of whether it was error to permit the impeachment because the prior inconsistent statement of the witness was made to a municipal police officer and not to a party (the State) or its attorney (the State's Attorney). The claim lacks substantial merit. It is true, of course, that the right to impeach one's own witness as to a prior inconsistent statement is limited to the party calling the witness, or his attorney, or to some person to be communicated to them, but that is not to say that the State under the circumstances here could not examine the witness for the purpose of eliciting the fact that he had made a prior statement inconsistent with his sworn testimony in order to show (as it had a right to do) why the witness was called.

As we see it, it cannot be seriously contended that the chief of police was not an agent of the State. See *Wynkoop v. M. & C. C. of Hagerstown,* 159 Md. 194, 150 Atl. 447 (1930), where it was held that the police officers of Hagerstown were not agents of the municipality but of the State. In this case we think the witness could not have failed to know that the statement he had made would be used by the State in aid of the criminal prosecution of the defendant. We need not consider whether an oral statement would have to be made directly to a party, or his attorney, or to some person to be communicated to them, for here the written and signed statement was made to the officer by the person who gave it, and thus may be considered as a continuing assurance that it could be relied on. Cf. *Commonwealth v. Bowers,* 127 A. 2d 806 (Pa. Super. 1956), where it was held that the prosecuting attorney could impeach a witness to neutralize the effect of the unexpected testimony. And see the Note, *Evidence-Examination of Witnesses—Surprise as Grounds for Impeaching a Party's Own Witness,* 55 Mich. Law Rev. 1180 (1956-57). The impeachment of the witness was not improper under the circumstances.

Since we find no prejudicial error, the judgment must be affirmed.

*Judgment affirmed.*