## JONES *v.* STATE

[No. 260, September Term, 1961.]

*Decided July 3, 1962.*
*Motion for rehearing filed and denied July 23, 1962.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and MARBURY, JJ.

*Josiah F. Henry, Jr.,* and *Tucker R. Dearing* for appellant.

*Robert S. Bourbon, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Saul A. Harris, State's Attorney* and *Charles E. Moylan, Jr., Assistant State's Attorney,* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

The defendant-appellant, Alexander (Punky) Jones, was found guilty, by a jury in the Criminal Court of Baltimore, of murder in the first degree, and, from the judgment and sentence entered on the verdict, has appealed to this Court.

Abraham Givner (the victim) was shot to death in his place of business on March 2, 1960, during a holdup perpetrated by the defendant and others. But the defendant, due to the lack of evidence, was not taken into custody on a charge of murder until June 3, 1960, when he was brought to the Central District Station for interrogation from the House of Correction, where he was incarcerated for another offense. Several days prior to the arrest of the defendant, the police received information tending to implicate the defendant in the robbery and murder of the victim in the course of questioning Robert Galloway White about another homicide case.[1]

On the date he was brought to the police station, the defendant was questioned from time to time from 10:40 a.m. to 7:00 p.m., but the interrogations were not continuous. He was

---

1. See the case of *White v. State,* 227 Md. 615. While the record in the instant case indicates that Robert Galloway White may have been involved in the robbery and murder of Abraham Givner, it does not appear whether he was also prosecuted on that charge.

served with food at 11:40 a.m. He was placed in the cellblock from 12:50 p.m. to 1:20 p.m. And he was fed again at about 5 p.m. During the rest of the period the defendant remained in the presence of the interrogating officers, but there were several other interruptions or breaks in the investigative process. As a result of the interrogations the defendant made two statements. The first statement was taken in shorthand beginning at 4:00 p.m. In this statement, the defendant denied having any connection with the killing of the victim. But in the second statement (also taken in shorthand and transcribed along with the first), which was begun at about 5:15 p.m., after he had been confronted with Robert Galloway White, the defendant admitted that he had participated in the commission of the crime. The typed statements were read to him and signed at about 7:00 p.m.

Both statements were admitted in evidence at the trial over objection, but, for some unexplained reason, copies of the statements, and not the originals, were admitted in evidence. Contrary to the practice in Baltimore City, but pursuant to an agreement between the State and the defendant, the preliminary inquiry as to the voluntary character of the statements was held in the presence of the jury. And in the course of the trial when, on cross examination, the prosecuting attorney inquired of the defendant, who professed the Islamic faith, if it was not one of the tenets of that faith "to kill half of the people in this country and take it over," the defendant explained that he was orthodox and did not adhere to any such doctrine and that he had "no intentions of killing nobody," but he did not then claim that he had been prejudiced by the examination, nor did he object to the remarks or move to strike them out, or request a mistrial; and the trial court did not of its own volition advise the jury to disregard what the prosecutor had said. Subsequently, the murder weapon and several cartridges were admitted in evidence after one of the police officers had testified that the defendant had identified the weapon as his.

There were no motions for a directed verdict or objections to the advisory instructions of the trial court.

Five errors have been assigned as the bases for this appeal: (i) that the inculpatory statement or confession was "involuntary and extracted by methods violative of the Fourteenth Amendment"; (ii) that it was reversible error to allow evidence of the voluntary character of the confession to be taken in the presence of the jury; (iii) that the cross examination of the defendant as to the tenets of his religious faith was so prejudicial as to deprive him of his right to a fair trial; (iv) that it was error to admit the murder weapon as an exhibit; and (v) that it was error to admit copies of the statements into evidence without showing why the originals could not be produced.

(i)

The appellant, though admitting that no force or violence was used to induce him to make either of the statements, contends that the inculpatory statement or confession was not his free and voluntary act.

The first complaint is that the confession was obtained without warning as to his rights and without benefit "of the advice of friends, family or counsel," but there is nothing in the record to show that he ever requested, or was denied, permission to consult anyone. Even if counsel had been asked for and denied (and the same could be said with respect to a friend or a member of one's family), that circumstance alone, absent a showing that the confession was not the free and voluntary act of the defendant, would not make it inadmissible. *Presley v. State,* 224 Md. 550, 168 A. 2d 510 (1961) ; *Driver v. State,* 201 Md. 25, 92 A. 2d 570 (1952) ; *Day v. State,* 196 Md. 384, 76 A. 2d 729 (1950). See also *Jones v. State,* 188 Md. 263, 52 A. 2d 484 (1947).

The appellant also complains of the length of the interrogation and contends that the "more than seven hours of inquisition" invalidated the confession. We do not agree. "It is well settled in this State that lengthy interrogation in and of itself does not make a confession involuntary in the absence of a showing that such interrogation, or other cause violative of the right to due process, had overpowered the will of the accused to resist making a statement that he would not other-

wise have made." *Ralph v. State,* 226 Md. 480, 485, 174 A. 2d 163, 166 (1961). And compare *Hyde v. State,* 228 Md. 209, 179 A. 2d 421 (1962). The defendant cited *Haley v. Ohio,* 332 U. S. 596 (1948), to support the contention that the prolonged questioning was coercive, but the circumstances in that case are quite different from the facts in this case. There the police, working in relays, had questioned the inexperienced fifteen year old boy relentlessly hour after hour, from midnight until dawn. But here, where there had been periods of respite from questioning and the defendant had been fed twice, there is nothing in the record to show either physical or mental exhaustion, or that the defendant ever complained that he was tired and needed rest. Nor is there anything to indicate or even suggest that the will of the defendant, (who, though lacking book learning, was nevertheless schooled in the things and ways of the criminal world), had been so overpowered that he was unable to resist making the inculpatory statement he gave the police.

The final contention with respect to the involuntary character of the confession is that it was procured by threats and inducements. Testifying in his own behalf at the preliminary inquiry involving the voluntary character of the confession, the defendant claimed that the police had threatened to charge his pregnant common law wife "with the gun" in order to induce him to sign the statements; that he did not read the statements (because he could not read), but had signed them upon being informed that they concerned the ownership and possession of the gun; and that the police had brought his "wife" to the police station for the purpose of having her tell him that she was going to be held in connection with the possession of the gun. But other than the fact that the common law wife was at the police station while the defendant was being questioned, there was no corroboration of any of these claims. And while the record shows that the interrogating officers were not recalled to the stand after the defendant had testified concerning the threats and inducements he claimed were made to him, the record is clear that all four of the officers had repeatedly testified, on direct, as well as on cross examination,

in reply to the usual questions propounded in similar preliminary inquiries involving the admissibility of a confession, to the effect that no promises, threats or inducements had been made to the defendant to get him to make the statements; and at least one of the officers testified that the defendant had been advised that any statement he made "must be free and voluntary" and that "no one would threaten him or harm him." Besides this, the police stenographer corroborated the fact that no "threats or promises" had been made to the defendant while she was stenographically recording the statements. It undoubtedly would have been more satisfactory had the officers been recalled to refute the claimed threats and inducements, but it does not follow that failure to do so made the confession inadmissible. After all, regardless of the order of proof, the court was obliged to decide preliminarily, on the conflicting evidence presented, whether there was sufficient proof of a threat or inducement to make the confession involuntary and therefore inadmissible. The court found there was not, and we cannot say that it erred in so doing. And although the common law wife was at the police station, there is nothing to show how she got there or why she was present, and it is not disputed that the defendant did not see her until after he had confessed. It is thus apparent that the facts in this respect are quite different from those in *Spano v. New York*, 360 U. S. 315 (1959), where a "childhood friend" of the accused had talked to him, and, under police instruction, had misled him.

Even if the defendant believed that his common law wife would not be held if he confessed, the confession was not thereby rendered involuntary or inadmissible merely because it was made to release another from suspicion of guilt: there must also be sufficient evidence that the confession was actually induced by a threat or promise or other cause. And in a majority of the cases in other states, as well as in this state, where it was claimed that a confession was inadmissible because it had been induced by a threat of arrest or a promise of release of a relative of the accused, and the evidence was conflicting as to ·the making thereof, it has been held that whether a threat or promise was actually made presents a question of fact. In *Rogers v. State*, 89 Md. 424, 43 Atl. 922

(1899), where the defendant confessed after his sister, who was also in custody but claimed she was innocent, had appealed to her brother to tell the police about the murder and a police officer had stated that if his sister were innocent it was his "duty as a man" to tell what he knew about the case, it was held that the evidence was insufficient to support the claim that the confession was made as a result of threats and inducements where the testimony of the defendant had been contradicted by the police officers. For cases in other states see, among others, *People v. Lazenby,* 85 N. E. 2d 660 (Ill. 1949), *cert. den.* 344 U. S. 842 (1952) ; *State v. Pierce,* 72 A. 2d 305 (N. J. 1950) ; *Fewell v. State,* 66 So. 2d 771 (Ala. 1953) ; *Henson v. State,* 266 S. W. 2d 864 (Tex. Cr. App. 1953) ; and *People v. Kendrick,* 363 P. 2d 13 (Cal. 1961).[2] And see the Annotation: *Voluntariness of Confession,* 80 A.L.R. 2d 1428.

Other than this, the record discloses that the trial court ex-

2. In the *Lazenby* case, the court, after observing that all persons present when the confession was obtained had expressly denied that any promises or inducements were made to the defendants by anyone, held that the confession was not elicited as the result of coercion. In the *Pierce* case, the court stated that the finding of the trial court and jury (as to the voluntary character of the confession and the weight to be given to it) would not be disturbed on appeal if there was competent evidence to support the confession, and held there was such support in the testimony of the police officers denying that a threat had ever been made. In the *Fewell* case, where the court was not satisfied from the evidence that the mother of the accused had been arrested or that he even thought she had been, it was held that the showing of involuntariness of the confession was not sufficient. In the *Henson* case, the court, after noting that all of the officers had directly denied any brutality or threats, held that the fears of the defendant for his wife would not render the confession inadmissible. And in the *Kendrick* case, where the court in stating that the conflicting evidence as to the voluntary character of a confession would not be reweighed by the reviewing court, it was held that the remarks made to the accused by the police (to the effect that his mother and wife might be subject to arrest if it appeared they had concealed his whereabouts) did not fall within the rule in California that a confession coerced by a threat to arrest a near relative is inadmissible.

plained to the jury at least twice—once when it ruled on the admissibility of the confession and again in the course of its advisory instructions as to the law—the respective functions of the court and jury as to whether the confession ought to be considered as evidence. In each instance, the jury was told (a) that before an alleged confession may be considered as evidence the State must prove that it was freely and voluntarily made and that it was not obtained by force or by a promise or threat or inducement and (b) that while the court was of the opinion that the confession was admissible as evidence, the jury, having heard the same evidence that the court heard, had a right to disagree with the court, and should not allow the ruling of the court to influence the decision of the jury. Specifically, the jury was advised that if it should conclude that the confession was freely and voluntarily made, it could consider it as evidence in determining the guilt or innocence of the defendant, but at the same time, the jury was further advised that if it found that the confession was induced by "some threat of prosecution of his girl friend," then it could not consider the confession as evidence. The jury returned a verdict of guilty of murder in the first degree.

We find no error on the part of the trial court in ruling that the confession was admissible, and we cannot say as a matter of law that the circumstances were such as to establish the involuntary character of the confession. Nor do we find any manifest error on the part of the court in weighing the credibility of the conflicting testimony. See *White v. State,* 227 Md. 615, 177 A. 2d 877 (1962), citing *Jones v. State,* 188 Md. 263, 52 A. 2d 484 (1947). See also *Grammer v. State,* 203 Md. 200, 100 A. 2d 257 (1953), *cert. den.* 347 U. S. 938 (1954). And since the jury in its dual capacity as the final judge of the law as well as the facts found the defendant guilty, we are without authority to set aside the verdict.

(ii)

The second contention is clearly without merit. The defendant not only failed to object to the taking of testimony in the presence of the jury at the preliminary inquiry as to the voluntary character of the confession, but the record discloses

that he had previously stipulated and agreed to such procedure in order to save time. Other than this it is clear that the defendant was not prejudiced, for the jury would have heard the same testimony as a result of the ruling that the confession was admissible as evidence.

### (iii, iv and v)

Likewise, since none of these alleged errors was objected to below, none is reviewable on this appeal. Maryland Rule 885. With respect to the third contention, we do not agree with the oral argument of the defendant to the effect that the cross examination of the defendant was such as to constitute a plain error material to the rights of the accused.

Finding no error in the only ruling of the trial court we had authority to review, the judgment will be affirmed.

*Judgment affirmed.*

BRUNE, C. J., filed the following dissenting opinion.

In this case I think that the cross-examination of the defendant with regard to his religious tenets went too far. In the first place, it was not really cross-examination, though the objectionable questions were introduced by a question at least suggesting that the defendant had testified on direct examination with regard to his faith. The fact was that the statement that he was a Moslem had come in through the testimony of a police officer, who first stated that the defendant declined to eat a pork sandwich because of his religion and then in response to a further question stated what the defendant had told him was his religion. The defendant himself said nothing about it on direct examination. In the next place, and this is far more important, because of the publicity which had been given to the alleged tenets of a particular Moslem or Muslim sect, the questioning seems to me to have been almost surely prejudicial, even though the defendant denied holding the widely publicized tenets. It is true that no objection was made to this questioning, but it is also true that no admonition to offset its effect was given, and I believe that the matter is one of which this Court can and should take notice, and that be-

cause of it the judgment should be reversed and a new trial awarded.

I may add that if a new trial were awarded, more full testimony with regard to whether or not the defendant's confession was properly obtained could probably be presented, but the issue was submitted to the jury under advisory instructions which I think were correct, and the evidence submitted was, in my estimation, sufficient to warrant the jury in arriving at the conclusion that the confession was voluntary and was not induced by threat or deceit or other improper means.