## W. A. HERGESHEIMER, JR. V. THE STATE.

No. 21149. Delivered June 12, 1940.

The opinion states the case.

*Nat Gentry, Jr.,* and *J. Y. Gray,* both of Tyler, for appellant.

*Milton Greer Mell,* District Attorney, of Gilmer, *Warren McDonald,* County Attorney, Smith County, of Tyler, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the state penitentiary for a term of thirty years.

The testimony adduced by the State, briefly stated, shows that LeRoy Higgins, the appellant's step-son, died on the 14th day of May, 1939, from the effects of strychnine poison. The appellant and his wife had gone on a visit to the home of the appellant's brother-in-law and were not at home at the time the boy became violently ill and died. The doctor who was called, to administer to the boy found him in a violent convulsion and immediately diagnosed the case as poisoning. He found a jar of jam and bread on the kitchen table which indicated that the boy had eaten some of it. The doctor took charge of the same and sent for the officers. When appellant, his wife and mother-in-law returned, the doctor inquired of appellant if there was any strychnine about the place. Appellant replied in the affirmative and showed him where it was. The officers took charge of it, as well as the jam and other articles on the kitchen table. The body of the deceased was taken to a hospital where the stomach was removed and then taken to the office of the State Chemist at Austin, Texas, who made an analysis of its contents and found that it contained strychnine in a sufficient quantity to have caused the death of any human being. Appellant, his wife and mother-in-law, were arrested on Tuesday afternoon immediately after the body had been interred. Appellant was taken from the Smith County jail to the jail at Canton and from there to the jail at Athens, during all of which time he was questioned by the officers with a view and purpose of getting a confession. He was taken back to the court house at Tyler in Smith County about midnight on Wednesday, May 17th, where he made a confession.

The State, for the purpose of showing a motive for the commission of the alleged offense, proved that the mother of the deceased carried a policy of insurance upon the life of the boy in the sum of $1,000, payable to her upon his death, which she collected after he died.

Appellant took the witness stand in his own behalf. He denied that he mixed and mingled strychnine with the jam or any other food with the intention of poisoning the deceased.

The grandmother of the deceased, who was called by the State as a witness, testified that appellant at all times treated the deceased kindly and the deceased thought a great deal more of the appellant than he did of his own father.

Appellant denied that the purported confession was voluntary or that it was true. He testified that he was mistreated by the officers who had him in charge until he decided to make the

kind of a confession that they desired. The officers denied that they mistreated him. They gave as their reason for taking him from jail to jail that they did not want any interference by writ of habeas corpus until they got through with him.

By Bills of Exception Nos. 1 and 2 appellant complains of the action of the trial court in admitting in evidence the purported voluntary confession made by the appellant to Warren McDonald, County Attorney in and for Smith County, Texas. The formal part thereof reads as follows: "I, W. A. Hergesheimer, Jr., having been duly warned by Warren McDonald, County Attorney of Smith County, Texas, that I do not have to make any statement at all, and that any statement I make may be used in evidence against me in my trial or trials concerning which this statement is made, do nevertheless, freely and voluntarily make the following voluntary statement:"

The bill shows that appellant was under arrest and in custody of the officers at the time of the making of the alleged confession. Appellant objected to its introduction in evidence because the confession upon its face failed to show that it was made to the person by whom the warning was given as required by the statute, Art. 727, C. C. P. The objection was overruled, the confession was admitted in evidence and the appellant in due time excepted to the ruling of the court.

A similar question as the one presented here has been before the court in a number of cases and they sustain the appellant's contention. In the case of Jenkins v. State, 60 Texas Cr. R. 236, Judge Ramsey, who was then a member of this Court, dissented from the rule theretofore announced by this Court in the case of Young v. State, 54 Texas Cr. R. 417, but the majority of the court adhered to the former rule and since then this Court has consistently adhered to the rule of the majority. See Henzen v. State, 62 Texas Cr. R. 336; Boxley v. State, 100 Texas Cr. R. 334, 273 S. W. 589; Justice v. State, 112 Texas Cr. 586, 18 S. W. (2d) 657; Miller v. State, 113 Texas Crim. Rep., 417, 21 S. W. (2d) 304; Grice v. State, 115 Tex. C. R. 64, 29 S. W. (2d) 793.

The bills further show that before the confession was admitted in evidence and in the absence of the jury the appellant testified that he was arrested by the officers on Tuesday afternoon; that he was taken to the Smith County jail and that night was taken from there to the Canton jail, and from there to the Athens jail; that while he was thus confined the officers, by force and threats, caused him to make the kind of

statement which they desired. He testified that they whipped him and constantly questioned him from the time he was arrested until approximately eleven or twelve o'clock on Wednesday night. The officers denied having whipped him but admitted that they constantly questioned him and moved him from jail to jail with the view and for the purpose of avoiding any interference by a writ of habeas corpus with their object and purpose in securing the confession; that they wanted to get through with him before they could be served with a writ of habeas corpus. It seems that the object of the officers in moving him from place to place and from jail to jail was to suspend the writ of habeas corpus until they got through with him. What did they mean by "getting through with him?" It can mean nothing more than that they wanted to obtain a confession by subjecting him to physical force or to such mental strain as would break his will-power; to get his mind in such a state that it would be subject to and readily yield to the entreaties of the officers. The action of the officers in moving appellant from place to place with the purpose in view of preventing him from obtaining a writ of habeas corpus was in violation of the Constitution of this State, which provides that the writ of habeas corpus shall never be suspended. The uncontradicted testimony of the officers as to the length of time and the manner of their questioning the appellant, we think, brings this case squarely within the rule announced by the Supreme Court of the United States in the case of Bob White v. State, (not yet reported), (60 Supreme Court, 1032), to which reference is here made. Consequently, we are constrained to reverse the judgment of the trial court and remand the cause for another trial.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.