## Samuel James Gasway v. State.

No. 25,778. April 9, 1952.
Rehearing Denied May 21, 1952.
Petition for Writ of Certiorari Denied by Supreme
Court of United States November 10, 1952.

Hon. Henry S. Bishop, Judge Presiding.

*McEacher, Ochsner, Lockhart & Langley,* Amarillo, for appellant.

*H. C. Pipkin,* District Attorney, Amarillo, and *George P. Blackburn,* State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is rape of a female under the age of 18 years; the punishment, death.

The injured child, 9 years of age at the time of the commission of the offense, testified that, while away from home on her newspaper route, she was accosted by appellant, who stopped the automobile he was driving and asked her for directions. She stated that appellant first asked her to get in the car; then forced her to do so; drove away with her to a dirt road, where he stopped the car; told her to take off her shorts and underclothes; made her lie down on the seat; and had intercourse with her. She stated that appellant thereafter drove on for a distance, stopped, and had another act of intercourse; and this procedure was repeated twice more; on one of such occasions appellant forced her to take his private part in her mouth; and that each act of intercourse hurt her. She testified that she finally got away from appellant after the last act near a grain elevator and started to walk back to town along a country road. She stated that appellant was wearing a plaid shirt, with large red, white and blue checks, and blue jeans, and that later she identified appellant in a police line-up.

There was some discrepancy in the testimony of the child as to the description of the automobile driven by appellant, and some question was raised as to whether she had tentatively identified someone else in another police line-up. We feel that the above is a substantial summary of her testimony which the jury had as a basis for their verdict.

A Mr. Seliger testified that, while approaching the city shortly before 8 o'clock the evening of the day charged in the indictment, near a grain elevator, he passed a little girl walking along the side of the road; that he stopped, and the child was reluctant to get in the car with him until after he had assured her that he would not hurt her. He described the injured child as nervous and nauseated, and recounted how he had brought her into town, where he re-united her with her parents.

The child's mother testified that her daughter had left home on her bicycle to deliver newspapers at 7:00 p. m. on the day charged in the indictment; that she next saw her in response to Mr. Seliger's call, found her crying and bleeding from her private parts; and that she carried her straightway to the hospital for examination.

Dr. Aronson testified that he found the area of the injured child's private part and underclothes to be spotted with blood; that her hymen had been freshly torn; that he discovered in her sexual organ what appeared to be male fluid; and that the child was in a highly emotional state.

Horace Johnson, an acquaintance of appellant, testified that, on the day in question, appellant had borrowed his automobile, had failed to pick him up at quitting time, and that his car had been returned to him later than night. Johnson further testified that, later in the week, appellant indicated to him that he had committed the offense in question and was concerned about disposing of his tell-tale shirt, which had been described in the newspapers and which Johnson had noticed appellant wearing on the day the offense was committed; and appellant, at that time, discussed with him the feasibility of cutting it up and flushing it down the commode. Johnson testified that he reported this conversation to the police.

A deputy sheriff corroborated the injured child's testimony about identifying appellant in the line-up at the jail, and a Mrs. Frazier corroborated the same as to appellant's dress on the day of the offense.

Appellant, testifying in his own behalf, admitted having borrowed Johnson's car on the day of the offense and told of a dissolute day drinking beer and gin from 9:30 in the morning on throughout the day, denied having worn the distinctive shirt described by the other witnesses, and accounted for his whereabouts during the hour between 7:00 and 8:00 p. m., when the offense was committed, in a vague and unsatisfactory manner. He testified that he left Amarillo alone at 5:45 p. m. and drove east to Conway, where he "hocked" his friend's spare tire for gasoline, and then returned to Amarillo, stopping on the way to drink gin and to sleep. It will be noted that the filling station operator to whom the tire was pledged had testified that the appellant was in Conway at 4:00 o'clock in the afternoon. Illustrative of his vague testimony as to his whereabouts at 7:00 p. m., we find the following:

"Q. You don't remember what you were doing around 7:00 o'clock on the night of June 25th? A. Not exactly, no."

and, again:

"Q. What were you doing around 7 o'clock—you said you were

in Conway sometime after 6 o'clock. A. Yes, sir.

"Q. You don't remember where you went after you left Conway? A. I cannot say, no sir, I just don't know."

and later:

"Q. And you don't remember anything you did then, between the time you left Conway and the time you woke up out there at this place you described, is that correct? A. Yes, sir.

"Q. Not a thing? A. No sir.

"Q. How do you know you didn't rape this little girl? A. I am pretty positive of it.

"Q. But you don't remember what happened, do you? A. Not exactly, no sir.

"Q. Well, do you or don't you? A. I believe I answered your question—I said no sir."

Appellant did not deny that, following the commission of the offense, he had told Johnson about his connection therewith. Appellant did testify, however, that, in his opinion, Johnson had turned him in to the law because he wanted to collect the money which had been offered as a reward for the arrest and conviction of the rapist. He further sought to attack Johnson's veracity by testifying that he had "thieved with him, and stole and gambled and bootlegged, and everything else with the man."

We find this evidence to be sufficient to support the conviction without reference to the two confessions introduced in evidence.

We now discuss their admissibility.

Appellant's attack upon the conviction is predicated upon his contention that the state's witnesses show the confession to have been taken from him in violation of his right to due process guaranteed to him by the State and Federal Constitutions.

It should be remembered that both confessions were introduced on rebuttal by the state and evidence heard as to their voluntary nature, first, before the court and, then, by the jury, under proper instructions.

Appellant does not claim that he was physically abused in any way or that he was coerced into giving the confession, but merely contends that the chronology of events, as shown below,

following his arrest, renders the confessions inadmissible as a matter of law. The undisputed facts are as follows:

1. Appellant was arrested in Amarillo at approximately 2:30 p. m. on Saturday, June 30th, was told that he was suspected of having raped the injured child, was exhibited to her in a lineup with other prisoners, and identified by her. It was at this juncture that the sheriff's testimony reveals that appellant said: "I want to go and take the lie detector." Whereupon, appellant's written consent and agreement to accompany peace officers to Austin for the purpose of being tested by the polygraph machine was secured; and the sheriff, his deputy and the appellant left at approximately 6:00 p. m. for Austin, which was the nearest place within the state where a polygraph machine might be found.

We pause to observe that, prior to the arrest of appellant, the injured child had tentatively identified another man as her assailant; another man had been carried to Austin in connection with this case, and had been cleared by the polygraph test. This, we feel, is important in determining the sheriff's intent in making this journey to Austin.

2. As stated, the party left Amarillo at 6:00 p. m. on Saturday.

Appellant contends this was done in order to spirit him out of the county to prevent him from securing a writ of habeas corpus. The sheriff denied that such was his purpose and testified that it was his custom to make long trips at night during the heat of the Texas summer. He further stated that he had told appellant's mother that they were taking appellant to Austin some time before they departed. Appellant contends that the trip was made 24 hours earlier than was necessary, because the sheriff knew that the Texas Department of Public Safety, where the test was to be made, was not open on Sunday. The sheriff testified that the polygraph operator would not take subjects unless they were completely rested, and that he was endeavoring to have appellant in such condition for Monday morning.

3. During the journey, the appellant was not handcuffed, and ate and drank when the officers did, and was not questioned. They arrived at Austin at 5:00 a. m., Sunday morning, and appellant was placed in the Travis County jail.

Appellant contends that, since he was placed in a cell by himself and the jailer was told not to let the newspapers or anyone else know that he was there, this constituted treatment of an accused denounced by the opinions of the Supreme Court of the United States. The facts in this case are distinguishable from the cases cited in these particulars: Here, appellant's mother had been told where they were going. Here, there is no testimony from the appellant and no evidence from any other source tending to show that the confinement over Sunday in Austin in any way contributed toward the making of the confession. He was not questioned during this period, and the place where he was held was not shown to have been an unusual place of confinement.

4. Monday morning, appellant was carried to the Identification Division of the Texas Department of Public Safety.

While it was brought out by appellant's counsel that the lie detector test showed conclusively that appellant was lying, we must view the evidence of the test just as we would any other type of questioning in order to ascertain whether the confession which followed was voluntary. The period of the test covered two hours and fifteen minutes, of which time forty-eight minutes was consumed in questioning, and the remainder of the time was spent in rest periods between the periods of questioning. No pain was shown to have been inflicted upon appellant, and he co-operated in taking the test. At the conclusion thereof, the party went to lunch. Following lunch, questioning was resumed, and fifteen minutes later appellant indicated his willingness to confess.

Appellant testified to substantially the same facts as outlined above concerning the giving of the test. He did not claim that any brutality was inflicted upon him, nor that anyone threatened to do so. He merely said that, "I got pretty tired of questions, one right after another, until I was pretty well give out, and to stop it all I says, 'if you will type it up and bring it in here I will sign it.'"

Appellant contends that the above detailed sixty-three minutes of intermittent questioning should be held to be "long and uninterrupted questioning," which would vitiate the confession which followed. With this contention, we cannot agree.

We think that, from the uncontradicted evidence, the con-

fession was admissible as a matter of law, and the issue of the voluntary nature thereof was properly submitted to the jury.

What has been said with reference to the first confession taken in Austin disposes of appellant's contention that the state failed to prove that the influences which prompted the making of the first confession were no longer present when the second was taken. His contention is necessarily predicated upon the assumption that the first confession was involuntary. We have found to the contrary.

Appellant's contention is that his confinement prior to the taking of the confession was unlawful for the reason that he was not carried forthwith before a magistrate, and therefore the confession taken during such confinement was rendered inadmissible, even though it is not shown that there was a causal connection between such failure to take before a magistrate and the making of the confession. Such a contention has been decided adversely to him in Dimery v. State, 156 Tex. Cr. R. 197, 240 S. W. (2d) 293; Shook v. State, 156 Tex. Cr. R. 515, 244 S. W. (2d) 220; and Gallegos v. Nebraska, 72 S. Ct. 141.

We have studied the other opinions of the Supreme Court of the United States cited us by appellant and do not feel that the facts in the case at bar bring themselves within the rules therein expressed, nor within the rule announced by this Court in Prince v. State, 155 Tex. Cr. R. 108, 231 S. W. (2d) 419.

Though not properly raised by a bill of exception, we next proceed to discuss appellant's contention that he was deprived of a trial by due process because the trial judge lost control of the trial by having gone to sleep on the bench. The record, at most, shows a moment of inattentiveness. The proceedings came to a halt until the court ruled on the objection, and no injury to appellant was shown.

In conclusion, appellant claims error was committed when the operator of the polygraph machine was permitted to testify as to the accuracy of his work, the contention being that all of the evidence and innuendo concerning the accuracy of the "lie detector" was purposely injected into the case by counsel for the state for the sole and only purpose of placing before the jury highly prejudicial matter which was not relevant to any issue in the case, and that the refusal of the trial judge to give the instruction requested by defense counsel was error requiring reversal of the conviction.

We find no objection to the court's charge and no requested charge covering this subject, nor do we find a bill of exception properly raising such question.

On page 413 of the statement of facts, indexed as bill of exception No. 7, we find a statement by defense counsel to the effect that the witness left the implication with the jury that the lie detector results were positive and remarked, "We will want an instruction on that." The testimony referred to and the above remarks of counsel occurred in the absence of the jury. Nothing is presented by this so-called bill. It does not relate to the admission or exclusion of evidence and may not, therefore, be presented by exception shown only in the statement of facts. If appellant had desired an instruction on the matter, he should have indicated such a desire at the time the court's charge was prepared. We might observe, however, that appellant had injected the issue of dependability of the lie detector test by questioning the sheriff on the subject.

Finding no reversible error, the judgment of the trial court is affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

In his motion for rehearing appellant bases his contention upon the proposition that the evidence of the state is not sufficient to support the conviction without the use of appellant's confessions; that the confessions were not admissible as a matter of law, having been obtained from him after a failure on the part of the officers to comply with the statutory direction to take him before a magistrate immediately upon being arrested; and that the action of the judge of the court, having gone to sleep on the bench, was more than inattentiveness on his part and amounted to an absence from the courtroom and a loss of control of the trial of the case.

The motion really and in fact brings nothing for our consideration which was not discussed in the original opinion. Normally such a motion calls for no written opinion unless we discover error, either in the statement of the facts or discussion of law, in the original opinion.

One could always write a thesis on a question of law raised before this court, but we would seldom satisfy the losing party

in doing so. The original opinion pointedly and sufficiently discusses the question raised to the admissibility of the confessions and, while the writer would naturally have employed different language from that used by the author of the original opinion, it is to be doubted that a more satisfactory discussion would be had because the same conclusion would have been reached. We think the written confessions were admissible and that none of the cited opinions of the Supreme Court of the United States on the subject should be construed to warrant a contrary conclusion.

The more lengthy discussion in the motion for rehearing is a review and argument on the weight of the evidence which is always appropriate argument for the jury, and no doubt same was made to the jury with great force as it is found in the motion. We cannot, however, assume the powers of the jury to hold the evidence insufficient where there is direct testimony to the existence of a fact. The evidence would be sufficient without the admission of the confessions and the confessions themselves are sufficient to support a conviction without much of the oral testimony which was introduced. With the introduction of the confessions and proof of the corpus delicti the jury verdict will be supported, and this court would have no power to supersede the jury's verdict with its own judgment.

The very lengthy motion prepared by earnest counsel, in great detail, picks to pieces the assertions in the opinion and in doing so adds no weight to the argument in favor of the motion. The appellant is before the court with the death penalty and we have reconsidered every item, however trivial. We admire counsel for his earnestness, for his diligence in presenting his case and his ability to search out the law on the subjects discussed, but we are unable to reach the same conclusions. It was not necessary to rewrite the original opinion.

The motion for rehearing is overruled.