## R. J. Hulen v. State.

No. 25,776. April 16, 1952.
Rehearing Denied June 28, 1952.

Hon. Henry S. Bishop, Judge Presiding.

*E. Bryon Singleton,* Amarillo, for defendant.

*George P. Blackburn,* State's Attorney, Austin, for the state.

BEAUCHAMP, Judge.

Appellant was convicted for the murder of his wife, Mabel Rachel Hulen. The jury fixed the penalty at death.

While the statement of facts brought forward in the record is lengthy, the pertinent evidence found in this record is quite brief. Appellant did not take the stand to testify in his own behalf. We find in the record a confession, in due form of law signed by him, admitting the killing and stating to some extent the details thereof. There is no denial that this was signed by him but the contention is that it was secured by undue pressure which resulted in breaking down his resistance and thereby the confession was obtained unlawfully.

The state examined several witnesses for the purpose of showing the circumstances under which the confession was signed and says that no undue influence was exercised and that the confession was voluntarily made by the appellant. The defense cross-examined these same witnesses and, without developing anything materially different from that which resulted from

the state's examination of them, contends, nevertheless, that he was so worn by the long examination and because of the fact that he was taken from his home several hundred miles to Austin, to the Texas Department of Public Safety, and thence to Plainview, Texas, and back to Amarillo, that his resistance was worn down; that the confession was not admissible in evidence against him. In the absence of this confession, admittedly, there is but slight evidence to cast any suspicion that the appellant was the murderer of Mabel Rachel Hulen on the night of April 25, 1951, as charged.

Summarizing the evidence given and the circumstances surrounding appellant from the time the body of his wife was discovered, we have reached the conclusion that the jury's finding that there was not sufficient influence exercised on appellant to produce the confession against his deliberate will should be sustained.

Soon after the body of the deceased was found in her room by her daughter appellant was notified. He and his wife had separated. She had filed suit for divorce. He had deeded her the home and that was the scene of the homicide. That she was murdered by someone is without question. Appellant came to the home, with another, but was not permitted to enter the room. The officers began questioning him that same night and he was kept up all during the night but was released the next day and permitted to go home. He was not under arrest during the next night and went at will. By agreement, he left with two officers for Austin the next day for the purpose of submitting himself to the lie detector operated in the Texas Department of Public Safety. This was Friday. He slept in the barracks at Camp Mabry that night with the officers and others who happened to be there. A close examination of all the evidence fails to reveal any indication of the infliction of any punishment, any threats or any promises. The only issue is whether or not the long siege of questions resulted in breaking his will as contended by appellant. This was properly submitted to the jury and they found to the contrary.

M. D. Rogers and Woody Riner accompanied appellant to Austin and both testified denying any conduct that would be calculated to break him down, as is contended in the argument and brief filed in his behalf. Their evidence is without dispute by anyone. It shows that on Saturday, the 28th, a complaint had been filed in Potter County charging appellant with murder

and he was then examined by the chief of the Bureau of Identification, Mr. Glen McLaughlin, in the Texas Department of Public Safety, whose testimony on the subject is chiefly relied upon to support appellant's contention. For that reason it will be noted more in detail. At the end of the day appellant was placed in jail at Georgetown, a short distance from Austin, and he remained there over Sunday and until Monday morning.

McLaughlin testified that he examined the accused on Saturday, Sunday and Monday (the 28th, 29th and 30th of April, 1951). His examination on Saturday was: ". . . off and on during a period of about five or six hours; on the 29th, again off and on during a period of about four hours; and on the 30th, during a period of about an hour or an hour and a half or maybe two hours. . . ." He testified that he was able to determine when a witness was getting tired; that he could discover it frequently before the witness himself could and that he did not in any case, and specifically in this case, examine the witness when he became tired, but would recess until the witness had time to rest, after which he would resume the examination in a normal way. Neither the method of the use of the machine nor the results are in evidence. The cross-examination attempted to show that during the period of time that McLaughlin left the accused he was submitted to rigorous examination by others. We fail to find any evidence supporting this contention.

If the examination by McLaughlin does not show a wearing down of his resistance then we find no evidence of anything whatsoever that would do it. He traveled in a car with others. He ate and slept as they did. He made no complaint at any time of any punishment being inflicted on him by reason of being brought to Austin. This is not a case in which the accused had been secretly carried from place to place contrary to law. He went to Austin by agreement and his daughter was informed of where they were going. Finally, on Monday, he agreed that if they would take him to Plainview, Texas, to see the man who had been his employer for many years he would make a statement. This request was granted. They went to Plainview and he rode from there to Amarillo in a car with his friend and the chief of police of Amarillo who had come to Austin on other business. They went directly to the home of a justice of the peace in Amarillo, in whose presence the confession was made which was written in the accused's presence and signed by him and properly witnessed. He was there served with a warrant

for his arrest and the justice of the peace bound him over without bond to await the action of the grand jury.

There is one other incident in connection with his examination in Austin which should be briefly stated. After the officers left Amarillo with him for Austin, a policeman found a piece of pipe which had been thrown between a hedge and a fence near the home where the tragedy occurred. It had blood on it and it was taken to the Texas Department of Public Safety by the Chief of Police who said that he laid it in front of appellant on the table. When asked about appellant's reaction he said that appellant paid no attention to it. There appears to be nothing damaging in this statement and, though it might be inconceivable that one could view the instrument of death which he had used without a strong feeling of some kind, yet there is not the least indication that this incident produced the confession. It was not made immediately thereafter. He promised to make a statement and that promise was deliberated on by him, in all probability, from the time he made the promise until he had traveled some five hundred miles to Amarillo by way of Plainview.                                    ,

The evidence supports the finding that the deceased was murdered. The confession supports the finding that this appellant committed the murder. All of the circumstances support the jury in the verdict which they reached with the punishment assessed. We find no reversible error and the judgment of the trial court is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

In our original disposition of this case we stated at some length what we understood to be the undisputed facts touching the admissibility of the confession as against the contention that it was not freely or voluntarily made.

At appellant's insistence, the facts have been examined again, in line with that contention.

Along with the trial of the case, the trial court, in keeping with the approved procedure in this state relative to the voluntariness of a confession in a criminal case, submitted that issue to the jury for their determination. The jury's conclusion of

guilt constituted a finding that the confession was not illegally obtained and that its admission in evidence was not erroneous.

The undisputed evidence fails to show that the confession was illegally obtained, under the laws of this state.

In addition to a determination of the admissibility of the confession under the laws of this state, it becomes the duty of this court to determine the admissibility thereof under the decisions of the Supreme Court of the United States.

In Prince v. State, 155 Tex. Cr. R. 108, 231 S. W. 2d 419, we called attention to the decisions of the Supreme Court of the United States wherein, upon the undisputed facts presented in each of those cases, that court reached the conclusion that the confessions there used in evidence against the accuseds offended against the guarantee of due process under the Fourteenth Amendment to the Federal Constitution.

It would unduly lengthen this opinion to discuss these decisions in detail. Suffice it to say that we are aware of no decision of the Supreme Court of the United States that would authorize our conclusion that said court would hold the confession in the instant case violative of due process.

We remain convinced of the admissibility in evidence of the confession of appellant.

The motion for rehearing is overruled.

Opinion approved by the court.