## GEORGE M. DAVIS V. STATE

No. 29,246. December 4, 1957.
State's Motion For Rehearing Overruled January 15, 1958

*Charles F. Mitchell* and *Clyde W. Woody*, Houston, for appellant.

*D. O. Bacon,* District Attorney, Newton, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The offense is murder; the punishment, life.

The deceased, Fred Bourghs, lived in a three-room house in the northern part of Sabine County, his nearest neighbor's home being about a mile away. Mr. Bourghs was about 80 years old.

On August 25, 1954, the bloody and battered body of Mr. Bourghs was found in his home, and the medical testimony was that he had been dead for some eighteen hours.

The evidence shows beyond question that multiple blows inflicted with some character of blunt instrument had crushed the head of Mr. Bourghs and caused his death.

That the deceased was murdered by someone is not seriously questioned. In fact witnesses were permitted to testify without objection that he was murdered.

To connect appellant with the murder, the state relied upon a statement in writing offered as the voluntary confession of appellant made and signed while he was under arrest some seventeen months after the murder.

When the confession was identified and shown to have been signed by appellant after the statutory warning, and after the officer to whom it was made had testified that he was sure that there was no persuasion, no undue influence, no promises and no force of any nature used on appellant to induce the statement it was offered in evidence.

Appellant objected and requested that he be permitted in the absence of the jury to develop the surrounding facts in order that the court might determine the inadmissibility of the confession as a matter of law, but the trial court declined the request and permitted the confession to be introduced.

Before the confession was read to the jury appellant's counsel stated their position as being that the confession was not freely and voluntarily made and was inadmissible as a matter of law, and that it would be prejudicial to the defendant to have

it introduced before the jury without the court first hearing the testimony regarding the facts surrounding its taking.

The admissibility of evidence is a question of law for the court, and this is true as applied to a confession the voluntary character of which is contested.

The rule is thus stated in Bingham v. State, 97 Texas Cr. Rep. 594, 262 S.W. 747, 748, 749:

"The learned trial judge appears to have overlooked the fact that in this state as well as in other jurisdictions where the question of the voluntary character of the confession is finally submitted to the jury it is still the duty of the court to first determine its admissibility, and, if an issue of fact be raised, then to let all the evidence upon the issue go to the jury in order that they may be able to pass upon that question as well as to determine the weight to be given the admission or confession. * * * Ruling Case Law, Sec. 123, states the rule as follows:

" 'To enable the court to make up its mind as to the voluntariness of a confession offered in evidence a preliminary investigation into the circumstances surrounding the confession is ordinarily made, at least when the defendant raises an objection to the admissibility of the confession. The better rule and the one supported by the weight of authority is that a preliminary investigation made by the court to determine whether a confession offered in evidence is voluntary and therefore admissible should be made out of the presence of the jury, especially if the defendant requests it.' "

We are not in position to hold that appellant, had he been permitted to do so, could not have proved in the absence of the jury that the confession was inadmissible as a matter of law.

On the other hand, we express grave doubt as to the admissibility of the confession under the record made before the jury, and point out the following:

The confession was signed at Beaumont, Jefferson County, Texas, on January 28, 1956, complaint having been filed and warrant issued for appellant's arrest the previous day.

Appellant, however, was first interrogated on January 23, and on January 24 was taken to Beaumont and placed in jail and was given a "lie detector test;" was returned to Jasper

County and placed in jail there about 5 A.M. on January 25; was interrogated during much of that day, and the following morning, (January 26) was taken to Austin where a second polygraphic examination was given him. One of the officers testified that he was not in custody until after this test, but was a suspect until that time.

On the return there was a lay-over at Woodville during which appellant was interrogated. During this interrogation officers exhibited to him a photograph showing the battered and bleeding head and face of the deceased, the officer remarking "when he handed them pictures to the jury what they would do * * * ." The photograph is made a part of the record on appeal.

The officers who were named as having so exhibited this and other photographs to appellant, and as making such remarks, made no denial.

Appellant was again placed in jail at Jasper about 3:30 A.M. on January 27, 1956. His interrogation was resumed about 7:30 A.M. and continued, with some interruptions, until late in the afternoon.

The complaint was filed at Hemphill that afternoon and the return on the warrant shows that it was executed at about 4 o'clock P.M. at Jasper.

Early the following morning appellant was again taken to Beaumont where sodium pentathol ("truth serum") was administered to him and thereafter the confession was signed.

There was much testimony pro and con regarding the treatment accorded appellant by the officers who had him in custody, but the facts stated are in effect those shown by the undisputed evidence. If appellant's testimony be true his confession was not voluntary and was inadmissible.

Substituting the horrible scene portrayed by the photographs exhibited to appellant for the visit to the scene of the alleged crime, the facts are quite similar to those in Prince v. State, 155 Texas Cr. Rep. 108, 231 S.W. 2d 419, where we held that under the decisions of the Supreme Court of the United States therein cited, the confession was inadmissible, and its use a denial of due process.

The fact that a complaint was filed and warrant executed

before the confession was signed is not alone sufficient to distinguish this case from Prince v. State, supra.

In the event of another trial the trial court should afford the defendant the opportunity to make his proof in the absence of the jury as to the facts and circumstances surrounding the taking of the confession, and rule upon the admissibility of the confession as a matter of law.

The pictures of the body of the deceased depicting the bloody condition of the floor and body should be excluded upon another trial as prejudicial and tending to prove no controverted issue. Shaver v. State, 162 Texas Cr. Rep. 15, 280 S.W. 2d 740.

Nothing herein should be construed as condemning the use of the polygraph as a means of interrogation. Webb v. State, 163 Texas Cr. Rep. 392, 291 S.W. 2d 331; Hulen v. State, 157 Texas Cr. Rep. 507, 250 S.W. 2d 211; Gasway v. State, 157 Texas Cr. Rep. 647, 248 S.W. 2d 942; and Paris v. State, 157 Texas Cr. Rep. 580, 249 S.W. 2d 217. However, upon another trial, the testimony which in effect revealed the results of the polygraph tests should be excluded from the jury. Peterson v. State, 157 Texas Cr. Rep. 255, 247 S.W. 2d 110.

The judgment is reversed and the cause remanded.

ON STATE'S MOTION FOR REHEARING

MORRISON, Presiding Judge.

The state, through her district attorney and our esteemed state's attorney, urges this court to pass upon the admissibility of the confession as a matter of law. They insist that we rule directly upon the question about which we expressed grave doubt in our original opinion.

In so ruling, two fundamental concepts should be borne in mind:

1. Any ruling we make is based upon the record before us and will not be binding if upon another trial there is additional or different evidence.

2. If we held the confession admissible as a matter of law, such holding would be subject to review by the Supreme Court of the United States. It would be futile for this court to hold the

same admissible when we were convinced that the Supreme Court of the United States, in line with their other decisions, would hold the same inadmissible.

In 1942, that Court, in Ward v. Texas, 316 U. S. 547, 86 L. ed. 1663, said:

"This Court has set aside convictions based upon confessions extorted from ignorant persons *who have been subjected to persistent and protracted questioning*, or who have been threatened with mob violence, or *who have been unlawfully held incommunicado without advice of friends or counsel*, or who have been taken at night to lonely and isolated places for questioning. *Any one of these grounds would be sufficient cause for reversal.*" (Emphasis ours.)

Now, let us see how the facts before us fit this rule.

Appellant was first interrogated on January 23, was taken into custody on January 24, and was subjected to "persistent and protracted questioning" until he finally signed the incriminating statement sometime late in the day on January 28. We do not attach the importance to the trip to Austin and the two trips to Beaumont as was attributed in the earlier cases, because we judicially know that in this sparsely settled state of ours the situs of a scientific test is often some distance from the scene of the arrest; but we do attach a great deal of importance to the time consumed in questioning an accused before he finally signs the incriminating statement.

The time consumed in questioning the appellant appears to be the same as that which caused the Supreme Court of the United States in Fikes v. Alabama, 352 U. S. 191, 1 L. ed. 2d 246, 77 Sup. Ct. 281, reh. den. 352 U. S. 1019, 1 L. ed. 2d 451, 77 Sup. Ct. 553, to hold the confession inadmissible. In that case, as in the case at bar, the relatives of the accused made application to see him during the time he was being questioned and were refused. See also Watts v. Indiana, 338 U. S. 49, 53, 93 L. ed. 1801, and the cases cited in the recent annotation which appears in 1 L. ed. 2d at page 1735.

We do observe, however, that the appellant lived in San Augustine County and the crime for which he was tried was committed in Sabine County, and we find no logical explanation for the appellant being incarcerated in the jails for Tyler and Jasper Counties during the course of his interrogation. This

moving from jail to jail in order to suspend the writ of habeas corpus is what this court condemned in Hubbard v. State, 153 Texas Cr. Rep. 143, 217 S.W. 2d 1019, and Hergesheimer v. State, 139 Texas Cr. Rep. 427, 141 S.W. 2d 598.

Probably more important is the fact that the appellant was held "incommunicado without advice of friends or counsel." In Gasway v. State, 157 Texas Cr. Rep. 647, 248 S.W. 2d 942, and Hulen v. State, 157 Texas Cr. Rep. 507, 250 S.W. 2d 211, wherein the accused was carried from the place of his arrest to a scientific test, we were careful to note that the officers notified his family where they were taking the accused. In the case at bar, the appellant's daughter inquired of the sheriff of San Augustine County on January 25 where the appellant might be found, and the sheriff was unable to tell her. On January 27, the appellant's two sons made inquiry at the Jasper County jail for the appellant, and the person in charge was unable to tell them where he was. Later that night, the sheriff of San Augustine County said that the appellant was in the jail at Hemphill in Sabine County, and when they arrived there early the next morning the appellant was no longer there. On January 30, they again went to the jail in Jasper, Jasper County, and asked to see the appellant and were told that he was not there, but they were able to see him through the bars in the jail. The jailer later admitted the appellant was there but still refused to let them see him. They were then told that they could not see the appellant until they secured the permission of Sheriff Smith of Sabine County, and when they talked to Sheriff Smith he refused to let them see the appellant until he "got through with the case."

Following the taking of the statement from the appellant, the sheriff who then had him in custody refused to allow the appellant's attorney to confer with him in private and refused to permit appellant's attorney to have him examined by a doctor unless another doctor of the officer's choosing was present at the examination.

Consideration is given to these events, which occurred after the signing of the incriminating statement, in weighing the testimony of the arresting officers that it was freely and voluntarily made. Haley v. Ohio, 332 U.S. 596, 92 L. ed. 224, 68 Sup. Ct. 302.

As pointed out in the original opinion, it is a further undisputed fact that the appellant was shown a gory picture of the deceased lying on the floor in a pool of blood and was required

to hold it for twenty-five minutes while he was being interrogated shortly before he signed the incriminating statement.

We have concluded from what has been said above and in our original opinion that the Supreme Court of the United States would hold this confession inadmissible as a matter of law. Having so concluded, it becomes our duty to hold accordingly.

The state's motion for rehearing is overruled.