**CENTRAL MUTUAL INSURANCE COMPANY, Appellant,**

v.

**D. & B., INC., Appellee.**

**No. 3800.**

Court of Civil Appeals of Texas.

Waco.

Nov. 17, 1960.

Rehearing Denied Dec. 8, 1960.

Bryan & Patton, Houston, for appellant.

Fulbright, Crooker, Freeman, Bates & Jaworski, W. H. Vaughan, Jr., Houston, for appellee.

WILSON, Justice.

Appellee recovered judgment under a mercantile robbery and safe burglary policy issued to it by appellant. Principal defenses of the insurance company were that insured breached a policy requirement that it keep records in such manner that the insurer "can accurately determine therefrom the amount of the loss", and that the robbery from which appellee's claimed loss resulted was perpetrated by collusion with its corporate officer and stockholder.

Appellant says the evidence establishes as a matter of law that appellee failed to keep the records required; and that there is insufficient evidence, or none, to support jury findings to the contrary.

The insured operated a food market. It kept a report in which daily entries were made. Each morning a physical count of cash on hand was made, and the total entered. Record was kept on the day of the robbery of total sales, loan proceeds, collections, and receipts from other sources. Records were also kept of disbursement items. Adding machine records from checking counters were kept. At night, the cashiers or checkers counted cash in registers, itemizing currency and coin by denomination, entering these items on printed forms which were placed in sacks containing the money, which were in turn placed in the safe. The cash register totals could not be altered without taking the machines to a repair shop. The tapes showed receipts of each department for the day in question. As to the records kept, appellant's accounting experts indicated they were satisfied that "as far as the figures on them they're all right." The amount of the claimed loss was computed by adding total cash receipts for the day (on which records were kept) to the counted cash on hand on the morning of the robbery, and by subtracting the recorded disbursements. This balance, less $9,000 cash and some checks left in the safe by the robbers, was the amount of loss found by the jury for which judgment was rendered. Appellant's attack on the records kept seems to be—not that appellee failed to keep records—but that they were not sufficient to meet high standards of accounting procedure considered desirable or necessary by appellant's witness. Its accounting witness testified: "I didn't say there was no proof; I said they're not adequate proof." The essence of the complaint is that "no physical count of money was made during the day or at the close of the day."

■ We think the evidence made a question of fact for the jury as to whether records were kept in such manner that appellant could accurately determine therefrom the amount of the loss. We overrule these points.

The insurance company complains that the court erred in excluding the testimony of an "experienced expert burglar"—a convicted robber who had participated in numerous such crimes—as to how a professional outlaw would have conducted a bona fide safe robbery.

Appellant's contention was that the loss in question was the result of a "faked inside job" resulting from collusion and conspiracy of a corporate officer of insured. The jury found against this theory. Appellee's evidence showed the officer closed the store and was traveling toward his home in his car when a masked man arose from the rear, forcing him at gun point to pick up another masked man, return to the store and open the safe which was robbed. The officer was then trussed up in his own clothing and left in a secluded spot near a river. The robbers drove off in his car.

The insurer produced a witness from the penitentiary who testified to preliminary plans for the robbery so as to implicate the corporate officer. This witness stated he "backed out" and did not participate, but that others who did were experienced in the robbery field. The proffered opinion testimony was to the effect that neither the witness nor any other so experienced would go about the matter as appellee's evidence showed; but would have done it in a more polished, skillful and adroit manner.

■ Appellant says it has found no case in which a court has held such evidence admissible. This court does not desire to be the first. There is nothing in the record to indicate that all or most professional or expert specialists in this field would employ identical or similar techniques in the same circumstances. The evidence was speculative, was not a proper subject for expert opinion evidence, and in our opinion the court did not err in excluding it. *2 Mc-*

Cormick & Ray, Texas Law of Evidence (2d Ed.) Sec. 1399, p. 232.

Error is assigned to exclusion of the opinion of the operator of a polygraph, or lie detector, that a polygraph test submitted to by the corporate officer demonstrated he was not telling the truth. The operator-witness had been polygraph examiner for the Houston police department for six years. He gave two tests to the officer. Appellant says the evidence was admissible because the subject corporate officer had been permitted to testify that a police officer had apologized for questioning him concerning his connection with the robbery, and it was admissible for impeachment to offset the impression that the police had cleared the corporate officer.

 The record shows appellant injected into the case the suspicions of the police department and its investigation in which appellee's officer was questioned. The evidence as to the apology was admitted as limited to rebuttal of such testimony. Appellant does not complain of its admission. An exceptional reason requiring admission of the opinion evidence excluded, therefore, does not exist. Is it otherwise admissible? We think the record made on the bill of exception would sustain findings that machine and operator met qualification requirements.

We find no jurisdiction at this time which admits evidence of results of lie detector tests in civil cases over objection; they are uniformly excluded. The cases considering the question and reasons for exclusion are collated in 23 A.L.R.2d 1306 and supplements. Consideration of admissibility in criminal cases was given in Davis v. State, 165 Tex.Cr.R. 456, 308 S.W.2d 880 and cases there cited. Discussion of the principle of the method and literature is contained in 3 Wigmore, Evidence (3d Ed.) Sec. 999, where the text suggests (1940) "the rules of interpretation of the record for this purpose are not yet definitely enough developed for judicial use." See also 3 Tex.Bar Journal, 482, 500.

While some of the current reasons for excluding the results of such tests may in the future appear ill-conceived because of the cautious pace at which jurisprudence approaches, accepts, and embraces the novel, even in science, we feel obliged to follow the uniform rule. We have carefully considered this, and appellant's other points, and they are overruled. Affirmed.