

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0551-10

### WILLIAM THOMAS LEONARD, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE ELEVENTH COURT OF APPEALS
### TARRANT COUNTY

KEASLER, J., filed a dissenting opinion, in which KELLER, P.J., and HERVEY, J., joined.

## DISSENTING OPINION

I dissent from the Court's opinion for two reasons: First, the Court creates an unnecessary and unclear standard of review when evaluating a trial judge's revocation of community supervision. Second, the Court firmly establishes a *per se* rule of exclusion for polygraph examinations by permanently labeling polygraph examinations unreliable as a matter of law. With one broad stroke, the Court closes the book on polygraph examinations regardless of how they are used or the nature of the criminal proceeding in which they are

mentioned. The majority's inflexible approach incorrectly concludes that, in the limited context of a community-supervision revocation proceeding in which the sole issue was Leonard's discharge from court-ordered sex-offender treatment, a sex-offender-treatment expert may never use polygraph-examination results to form an opinion about continued treatment, even if those results constitute only a part of the basis for the opinion.

We have long held that an abuse-of-discretion standard applies when reviewing a trial judge's revocation of probation.[1] A trial court abuses its discretion by revoking probation when the State has failed to prove a violation by a preponderance of the evidence.[2] Today, the Court has created a new variant of the abuse-of-discretion standard because, in its view, the time-tested standard is insufficient to protect against revocations based upon a probationer's discharge from therapy for "a wholly inappropriate reason—such as illegal discrimination or mere caprice."[3] The Court identifies this as a due process concern necessary to this case's disposition, even though there is nothing in the record to suggest Leonard was discharged for one of these reasons, nor does Leonard assert such a claim. To remedy this perceived issue, the Court announces that appellate courts are required to examine "the third party's use of discretion to ensure that it was used on a basis that was

---

[1] *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); *Caddell v. State*, 605 S.W.2d 275, 277 (Tex. Crim. App. 1980).

[2] *Cardona*, 665 S.W.2d at 493–94.

[3] *Ante*, op. at 10–11.

rational and connected to the purposes of community supervision."[4]

This new standard is premised on an overly expansive view of due process in revocation proceedings that we have never adopted and that is unsupported by United States Supreme Court precedent. In *Ex parte Carmona*, a plurality of the Court relied upon the Supreme Court's opinions in *Gagnon v. Scarpelli*[5] and *Morrissey v. Brewer*[6] and defined the contours of due process in community-supervision revocations: "To meet the requirements of due process, the final revocation must be preceded by a hearing where the probationer is entitled to written notice of the claimed violations of his probation, disclosure of the evidence against him, an opportunity to be heard in person and to present witnesses and documentary evidence, a neutral body, and a written statement by the fact finder as to the evidence relied on and the reasons for revoking probation."[7] Furthermore, if the trial judge finds a violation of a condition of probation and has the discretion to continue the probation, due process provides the probationer "an opportunity to show not only did he not violate the conditions [of his probation], but also that there was a justifiable excuse for any violation or that

---

[4] *Ante*, op. at 11.

[5] 411 U.S. 778 (1973).

[6] 408 U.S. 471 (1972).

[7] *Ex parte Carmona*, 185 S.W.3d 492, 495 (Tex. Crim. App. 2006) (plurality op.) (citing *Gagnon*, 411 U.S. at 796)).

revocation is not the appropriate disposition."[8] Having the opportunity to hear evidence from both the State and the probationer, the trial judge as "the sole trier of facts, of the credibility of the witnesses, and of the weight to be given to particular testimony at the hearing" can accord varying weight to a witness's testimony or completely disregard it.[9] Moreover, the trial judge has the discretion to continue a probationer's community supervision, revoke it, or reduce the sentence after a violation has been proved.[10] Therefore, the potential for revocation based on discharge from a treatment program for a "wholly inappropriate reason" is tempered by the probationer's opportunity to justify the alleged reason for discharge, the trial judge's discretion in evaluating the State's evidence, and, if found true, the trial judge's wide latitude in crafting an appropriate disposition. I do not find any authority, nor does the majority cite any, supporting the Court's conclusion that our current abuse-of-discretion standard is inadequate.

Aside from whether due process requires a new standard of review, the Court's new standard is vague and fails to provide sufficient guidance to the lower courts. In addition to being rational, the third party's use of discretion must now be "connected to the purposes of community supervision." With its citation to Texas Code of Criminal Procedure Article 42.12, § 11, the majority's opinion is unclear how the standard should operate. Does an

---

[8] *Black v. Romano*, 471 U.S. 606, 614 (1985); *Euler v. State*, 218 S.W.3d 88, 91 (Tex. Crim. App. 2007).

[9] *See Naquin v. State*, 607 S.W.2d 583, 586 (Tex. Crim. App. 1980).

[10] TEX. CODE CRIM. PRO. art. 42.12, §§ 22, 23(a).

appellate court have to determine that the third party's use of discretion was "designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant" like Article 42.12, § 11 requires of any condition imposed by a trial court?[11] But Article 42.12, § 11 clearly gives the trial judge the exclusive authority to impose conditions of probation to achieve these goals. By entrusting treatment decisions to a third party, a trial court does not abandon this authority, nor does it impermissibly permit another to unilaterally impose new ones. Or must a reviewing court now automatically question whether the condition of probation requiring the successful completion of treatment is a reasonable condition designed to meet these goals? And must this review occur regardless of an objection to the condition's imposition or whether actually raised on appeal? Assuming a new standard of review is required for revocations based on treatment decisions of a third party, it should be one that is clear and informs the lower courts how to implement it.

Turning to Leonard's probation-revocation hearing, George Strain, Leonard's treating psychotherapist, testified that he terminated Leonard's treatment resulting in an alleged violation of a condition of his probation—the successful completion of sex-offender treatment. Strain testified that he discharged Leonard because he believed Leonard was being dishonest in the course of his treatment. He further testified that, "It's important for me to feel that they're telling me the truth, that they're doing the things they're supposed to do so they're not putting children at risk." Although there were times Leonard kept secrets

---

[11] *Id*. § 11(a).

and had not been completely honest about things which were discovered outside of the polygraph examinations, Strain testified that his opinion about Leonard's dishonesty was primarily based on Leonard's five failed polygraphs. He also testified that polygraph examinations are a normal part of sex-offender treatment and that experts in the field, including himself, reasonably rely upon the results in forming their opinions. Strain stated he uses polygraphs as a way of gauging a person's compliance with their treatment contract and the conditions of their probation. He also stated that polygraphs are used as a tool in making treatment decisions and are used to determine whether the person is being honest about their offense, their history, and their assurances of avoiding children, which if not genuine, could pose a community-safety risk. The inability to form opinions from polygraph results would, according to Strain, greatly decrease a therapist's ability to provide sex-offender treatment.

Addressing the admissibility of Strain's testimony, the Court relies upon our line of cases broadly pronouncing polygraph results inadmissible to conclude that polygraph results are unable to form even a part of the basis of a sex-offender-therapist's expert opinion. But our past statements concerning polygraph results do not aptly apply to the present case like the majority presumes. The breadth of the Court's holding today is alarming in that it suggests that in any future proceeding, polygraph results—regardless of the context in which they may be considered or the purpose for which they may be proffered—will never be permissible as a matter of law. However, a number of federal circuit courts have either

abandoned or never adopted a *per se* rule of inadmissibility.[12] While we have stated "[t]he existence and results of a polygraph examination are inadmissible for all purposes"[13] and are not admissible in a Texas criminal proceeding,[14] we have never addressed whether (1) the use of polygraph results were improper in a therapy context or a revocation proceeding or (2) whether an expert could rely on the results to render an opinion on a probationer's compliance with court-ordered therapy.

Though revocation hearings bear some similarity to trials, they are distinct in that there is no jury, no finding of guilt, and the burden of proof by which a violation of probation must be proven is a preponderance of the evidence as opposed to beyond a reasonable doubt. Unlike a trial, a probation-revocation hearing is neither criminal nor civil in nature.[15] *Romero v. State*—the authority upon which the majority heavily relies—and the cases decided before it, all involved the polygraph's reliability in relation to jury trials deciding

---

[12] *See, e.g.*, *United States v. Montgomery*, 635 F.3d 1074, 1094 (8th Cir. 2011); *Nawrocki v. Twp. of Coolbaugh*, 34 F.App'x 832, 838 (3rd Cir. 2002); *United States v. Lea*, 249 F.3d 632, 638–41 (7th Cir. 2001); *United States v. Cordoba*, 104 F.3d 225, 228 (9th Cir.1997); *United States v. Posado*, 57 F.3d 428, 434 (5th Cir.1995); *United States v. Odom*, 13 F.3d 949, 957 (6th Cir. 1994); *United States v. Piccinonna*, 885 F.2d 1529, 1531–37 (11th Cir.1989).

[13] *Tennard v. State*, 802 S.W.2d 678, 683 (Tex. Crim. App. 1990); *Nethery v. State*, 692 S.W2d 696, 700 (Tex. Crim. App. 1985).

[14] *Nesbit v. State*, 227 S.W.3d 64, 66 n.4 (Tex. Crim. App. 2007) (claiming in dicta, "Neither the results of a polygraph test nor the fact of failing a polygraph test are admissible in a Texas criminal proceeding.").

[15] *See Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993).

whether a defendant was guilty.[16] The unmistakable undercurrent of our previous cases has been a concern regarding the indelible hold polygraph results tend to have on jurors; a concern that does not exist in an adjudication or revocation proceeding where there is no finding of guilt or a jury to unduly influence. In the litany of cases the Court describes dealing with polygraphs, not one evaluated the polygraph's reliability in a therapy context or in a revocation proceeding. Yet the Court grafts our sweeping holdings to a factually and legally distinct situation. Therefore, our previous cases deeming polygraph results unreliable are inapposite to the limited application of polygraph results in the present case, and do not warrant a holding that forecloses the possibility of future admissibility or limited use of polygraph results in all future proceedings.

Furthermore, unlike some of our past cases, the polygraph results that Strain relied upon were not introduced to show the truth or falsity of a particular answer. The issue was not whether Leonard lied on any particular occasion or in response to a given question, but whether he was generally being honest during the course of his treatment. The polygraph results were offered to explain why Strain believed that Leonard was being dishonest, that such a determination was rational, and that discharging Leonard from treatment was not an

_____

[16] *See, e.g., Romero v. State*, 493 S.W.2d 206, 211 (Tex. Crim. App. 1973) (citing, in addition to other concerns, "the supposed tendency of the trier of the facts to treat polygraph evidence as conclusive on the issue of the guilt of the accused, the lack of standardization of test procedures, and the difficulty for jury evaluation of examiners' opinions."); *Nichols v. State*, 378 S.W.2d 335, 337–38 (Tex. Crim. App. 1964) ("The jurors, being lay persons, no doubt felt that the evidence of a lie detector test would reveal the truth . . . .").

arbitrary decision.[17]

Texas Rule of Evidence 703 permits an expert to base his or her testimony on facts or data that may be inadmissible in evidence, "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."[18] Strain's testimony that experts in his field rely on polygraph results to form opinions about an individual's sex-offender treatment satisfied Rule 703's reasonable-reliance standard. In addition, the treatment and practice standards adopted by the Council on Sex Offender Treatment ("Council")—which may be imposed as a probation condition under Texas Code of Criminal Procedure article 42.12, § 11(i)—further support Strain's assertion that polygraphs are reasonably relied upon by experts in the field of sex-offender therapy. The Legislature created the Council to "develop treatment strategies for sex offenders . . . [and] set standards for treatment of sex offenders that must be met by sex offender treatment providers . . . .[19] Through its adopted standards of treatment, the Council has affirmatively endorsed the use of polygraph examinations in the course of treatment and on-going

---

[17] *See Nawrocki*, 34 F.App'x at 838 (holding the District Court did not abuse its discretion in admitting polygraph evidence because it was not being admitted for its truth, but rather to prove probable cause); *United States v. Miller*, 874 F.2d 1255, 1261 (9th Cir. 1989) (stating "that polygraph evidence might be admissible if it is introduced for a limited purpose that is unrelated to the substantive correctness of the results of the polygraph examination.").

[18] TEX. R. EVID. 703.

[19] TEX. OCC. CODE § 110.151.

evaluation as well as the polygraph's reliability in the sex-offender treatment context.[20]

These standards of treatment corroborate Strain's testimony that polygraphs are used to

gauge a person's compliance with a treatment plan, advance the goals of therapy, and ensure

community safety. If polygraph examinations were not sufficiently valuable and reliable for

sex-offender treatment, it is reasonable to assume that the Council would not require licensed

therapists to use them in the course of treatment.

We have previously held that the use of the polygraph is a proper means of

investigation.[21] Polygraphs are commonly used as investigative tools and are "not used to

gather possible evidence for use during a trial, but solely to serve as a catalyst for further

---

[20] *See* 22 TEX. ADMIN. CODE § 810.64(d)(18) (2012) ("Sexual history polygraphs shall include all aspects of a client's sexual behaviors and a victim's list that occurred prior to the offense of conviction."); *Id*. § 810.64(d)(17) ("Licensees should refer the client for a polygraph exam as soon as possible if the client is suspected of engaging in suppression behaviors on the PPG [penile plethysmograph]."); *id*. § 810.65(g) ("The licensed sex offender treatment provider is primarily responsible for preparing the juvenile for any polygraph."); *id*. § 810.68(3) ("Treatment shall address the sequence of behaviors, emotions, and cognitions which are identifiable and which precede deviant sexual behavior in a predictable manner. Autobiographies, sexual history polygraphs, offense reports, interviews and cognitive-behavioral chains shall be used to identify antecedents to offending."); *id*. § 810.2(31) ("[']Successful Completion of Sex Offender Specific Treatment[']—May include . . . no deception indicated on exit polygraphs, the indication of a non-deceptive examination result on the sex history polygraph . . . .").

[21] *Davis v. State*, 308 S.W.2d 880, 883 (Tex. Crim. App. 1958); *accord Gomez v. Atkins*, 296 F.3d 253, 264 n.8 (4th Cir. 2002) ("While polygraphs are generally not admissible at trial, such tests are a well-recognized law enforcement technique, and a reasonable officer might take their results into account in assessing probable cause.").

investigation.[22] In his brief, Leonard concedes that polygraphs are valid investigative tools and therapeutic aids that may be used.[23] Polygraphs in the sex-offender therapy context serve an investigative function in that they assist therapists in their determination of whether a probationer is complying with treatment and progressing and in that they enable therapists to discover antecedents to reoffending.[24]

Although not addressed by the court of appeals's or this Court's opinions, Strain provided an additional basis for his conclusion that Leonard was being dishonest apart from his reliance on the failed polygraph examinations. Strain testified that, "There had been times that Mr. Leonard has kept secrets and not been completely honest about things, and those have come out in polygraphs which is not part of the results of the polygraphs." While Strain stated he primarily relied on the polygraph results, discovering that Leonard was keeping secrets without the use of the polygraph's results is alone a rational basis for Strain to conclude Leonard was being dishonest and required Leonard's discharge from treatment.

I disagree with the Court's overly broad holding that polygraphs can never be reliable or reasonably relied upon to form an expert opinion. I would hold that the trial judge did not

---

[22] *Ex parte Renfro*, 999 S.W.2d 557, 561 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (citing 3A WIGMORE ON EVIDENCE § 999, at 946 (Chadbourn Rev. 1970); *see People v. Miller*, 208 Cal. App. 3d. 1311, 1315 (1989).

[23] Appellant's Br. on the Merits at 9.

[24] *See* 22 TEX. ADMIN. CODE § 810.68(3) ("Autobiographies, sexual history polygraphs, offense reports, interviews and cognitive-behavioral chains shall be used to identify antecedents to offending.").

abuse her discretion in adjudicating Leonard because Strain (1) learned Leonard was keeping secrets without the use of polygraph results, and (2) properly relied upon Leonard's failed polygraph examinations in concluding that Leonard was being dishonest which warranted Leonard's discharge from treatment.  Because the Court does not so hold, I dissent.


DATE FILED: November 21, 2012

PUBLISH